[No. 7,429.—Department One.]

## L. L. BEAUCHAMP *v.* J. W. ARCHER ET AL.

CONTRACT OF SALE—SALE.—The plaintiff contracted with the defendants for the purchase of a lot of cattle of certain brands, then running with a larger herd on the defendants' ranch—paying to the defendants a portion of the purchase money—but neither party knew how many cattle there would be of the description agreed upon, nor was there any time fixed for the delivery of the cattle or the payment of the balance of the purchase money. The plaintiff notified the defendants that on a day specified he would receive the cattle, and, on that day, the cattle having been tendered to him by the defendants, offered in payment of the balance due a check—payable two days after sight—which the defendants refused to accept; and told the plaintiff that if he paid the money he could have the cattle, and otherwise not. Several days afterward, the plaintiff tendered to the defendants the balance of the purchase money, and subsequently, but on the same day, the defendants tendered to the plaintiff the money paid by him, each tender being refused. In an action for replevin of the cattle,

*Held*, That the contract was executory in its nature; that the payment of the price and the delivery of the cattle were concurrent conditions; that, the time of delivery having been fixed by the plaintiff, he should have been prepared to pay the balance of the purchase money, and his failure to do so gave the defendants the right to rescind; and that this right was not defeated by the tender made by plaintiff subsequently to his default.

APPEAL from a judgment for the plaintiff in the Superior Court of San Luis Obispo County.  McMURTRY, J.

The following finding of the Court will illustrate the points made by Respondent's counsel:

That on April 1st, 1880, the plaintiff bought from the defendants all°of the cattle of the kind, brand, and description mentioned in the plaintiff's complaint and in the defendants' answer, then running in a band of two hundred and fifty head of cattle belonging to defendants, at the agreed price of twenty-two dollars and fifty cents for the steers, and twenty dollars for the heifers, the plaintiff paying the defendants at the time, as part of the purchase money, one hundred dollars in a sight check on Grant, Lull & Co.   *   *   *
and in a few days thereafter plaintiff paid to defendants of said purchase money the sum of one hundred and fifty dollars, in a check on said Grant, Lull & Co., payable ten

days after sight, both of which said checks were accepted by defendants and the money by them drawn thereon.

*W. J. & Wm. Graves & Ernest Graves,* for Appellants.

Beauchamp never owned the cattle, nor was he entitled to their possession. The delivery of the cattle and the payment of their price were concurrent acts, under the agreement of sale. (Benj. on Sales, §§ 310, 311, 320, 592, 677, and notes; *Southwestern Freight etc. Co.* v. *Plant,* 45 Mo. 517; *Scudder* v. *Bradbury,* 106 Mass. 422–427; *Knight* v. *N. E. W. Co.,* 2 Cush. 271–288; *Barnes* v. *Bartlett,* 15 Pick. 77; *Putnam* v. *Lamphier,* 36 Cal. 157; 2 Kent's Com. 497; *Riddle* v. *Varnum,* 20 Pick. 283; *Denny* v. *Williams,* 5 Allen, 3, 4; *Heilbutt* v. *Hickson,* L. R., 7 C. P. 449; *Caruthers* v. *McGarvey,* 41 Cal. 15.) The payment or tender of the price was a condition precedent to his touching the cattle, and unless he paid when they were parted out, he could not take them or sue for them. (2 Kent's Com. 493–497; *Hanson* v. *Meyer,* 6 East, 553; *Lupin* v. *Marie,* 6 Wend, 77; S. C., 21 Am. Dec. 256; *Barrett* v. *Goddard,* 3 Mason, 111, 112; *Simmons* v. *Swift,* 5 Barn. & Cress. 857; *Hodgson* v. *Barrett,* 33 Ohio St. 63; S. C., 31 Am. R. 527; *Henderson* v. *Lauck,* 21 Penn. 359; *Kelly* v. *Upton,* 5 Duer, 340; *Morton* v. *Lamb,* 7 T. R. 125; *Bloxam* v. *Sanders,* 4 Barn. & Cress. 941.) The Archers had the right to retain the cattle after Beauchamp's refusal to pay the price, and to rescind the sale; and they did rescind. (Civ. Code, §§ 1688, 1691, 1749; *Benedict* v. *Field,* 16 N. Y. 595; *Des Arts* v. *Leggett,* id. 582; *Neil* v. *Cheves,* 1 Bail. 537; *Neil* v. *Tillman,* id. 538; *Pickett* v. *Cloud,* id. 362.) The contract of sale was extinguished by the Archers' offer to perform it May 28th, 1880, and Beauchamp's tender, June 2d, 1880, came too late. (Civ. Code, § 1682.)

*W. H. Spencer, J. N. Turner,* and *Craig & Meredith,* for Respondent.

The first finding of the Court is that the plaintiff bought from defendants the cattle sued for, on April 1st, 1880, and at the time paid to them part of the purchase price. The title and ownership of the cattle then vested in the plaintiff. Plaintiff paid defendants during April, 1880, of the purchase money, two hundred and fifty dollars, in two checks upon

Grant, Lull & Co., of Cambria, and defendants accepted these checks without question, and obtained the money thereon upon presentation. On May 28th, 1880, when the cattle were separated, defendants without any previous intimation refused to accept plaintiff's check on the same parties, for three hundred and twenty-five dollars, the balance of the purchase price, giving no reason whatever for such refusal. Under the facts, plaintiff was clearly entitled to a reasonable time within which to obtain and tender the money. Defendants' attempted recession was not until after the tender and demand by plaintiff on June 2d, 1880. (Civ. Code, §§ 1689, 1691.)

Ross, J.:

On the 1st of April, 1880, the plaintiff contracted with the defendants for the sale by the latter to him of a lot of cattle of certain brands, which were then running with a larger herd on their rancho. The price agreed upon was twenty-two dollars and fifty cents per head for the steers, and twenty dollars per head for the heifers; and plaintiff paid to the defendants two hundred and fifty dollars on account of the purchase price. At the time of the contract neither plaintiff nor defendants knew how many cattle there would be of the description agreed on, nor was there any time fixed for the ascertainment of that fact or the delivery of and payment for them. On the 27th of May plaintiff notified the defendants that he would receive the cattle on the succeeding day, May 28th; and on that day went, with two employees, to the defendants' rancho for that purpose. Plaintiff and defendants then got together the entire herd, consisting of two hundred and fifty head, out of which they selected those of the description mentioned in the contract, numbering twenty-six in all, and consisting of twenty-two steers and four heifers. When the twenty-six were so separated they were agreed upon as the cattle contemplated by the contract of April 1st. The parties then ascertained by computation that the balance of the purchase price was three hundred and twenty-five dollars, and the defendants thereupon tendered the plaintiff the cattle and demanded of him payment of that sum. The plaintiff

did not have the money, but offered the defendants a check for the amount on Grant, Lull & Co., payable two days after sight. Defendants refused to take the check in payment, and told the plaintiff if he did not pay them the money for the cattle they would turn them back with the herd—whereupon the plaintiff asked defendants to hold the cattle until he could go to Cambria (a distance of twenty miles) and get the money for them, or that defendants accompany him on the road with the cattle and he would get the money at Cambria, or sooner if he could. The defendants having refused to accede to either of these propositions, the plaintiff left and the defendants turned the twenty-six head of cattle back with their herd. Several days afterwards, to wit, on the 2d day of June, the plaintiff returned to the defendants' rancho and there tendered them three hundred and twenty-five dollars, and demanded possession of the cattle. The defendants refused to accept the money, or to make the delivery, and subsequently, but on the same day, offered to the plaintiff the two hundred and fifty dollars, received by them at the inception of the contract. This the plaintiff refused to take, and afterwards instituted this action to recover possession of the twenty-six head of cattle, or their value.

It is quite evident that the contract of April 1st was executory in its nature, and that a property in the subject-matter of it did not then pass to the plaintiff; for it was not then known by either party what or how many cattle in the defendant's herd would come within the description agreed on. All this was a matter for future ascertainment. By the contract the time for their identification was not fixed, nor was anything said about the time of the delivery or of the payment of the balance of the purchase price. In such cases the law presumes that the parties intended to make the payment of the price and the delivery of the possession concurrent conditions. (Benjamin on Sales, 438, 499; 2 Kent's Com., side page 496.) When, therefore, the plaintiff went, in accordance with the previous notice given by him, to the defendants' rancho, for the purpose of receiving the cattle, he should have gone prepared to pay the balance of the purchase money; for the part payment made by him at the time of entering into the contract did not operate to invest him with a

property in the cattle, and the right of the defendants to have the whole purchase money paid before they parted with the possession, left them at liberty to rescind upon the failure of the plaintiff to comply with his part of the agreement. *Neil* v. *Cheves,* 1 Bail. S. C. 539; *Pickett* v. *Cloud,* id. 362; Civ. Code, § 1749.) The plaintiff no doubt supposed that the defendants would take the check on Grant, Lull & Co., payable two days after sight, but they were not bound to do so; nor were they legally bound to go with him to Cambria for the money, or to wait until he could go there for it. The plaintiff himself fixed the time for the selection and delivery of the cattle, to which the defendants agreed, and the law imposed upon him the duty of being prepared to pay the money. (Benjamin on Sales, 449, 524; 2 Kent's Com. 496–7.) Having failed to comply with his part of the agreement, the defendants were at liberty to rescind the contract, which, of course, involved the return of the money they received under it. This right of rescission on their part was not defeated by the tender made by the plaintiff subsequent to his default, at which time the cattle in controversy were returned to the herd, the gathering of which, in the first instance, according to the findings of the Court, consumed four hours, and would consume the same period a second time, besides entailing damage to the herd to the amount of twenty-five dollars.

Judgment reversed and cause remanded.

McKINSTRY, J., and McKEE, J., concurred.