LILLIAN B. MASON, APPELLEE, V. CORDELIA M. STRICKLAND
ET AL., APPELLANTS.

FILED MAY 3, 1905. No. 13,782.

1. **Specific Performance.** A party to a contract of sale of real estate
   for cash upon the delivery of the deed is excused from perform-
   ance if the other party neglects or refuses to pay when the deed
   is ready for delivery and requests an extension of the time for
   payment.

2. **Rescission.** It is optional with a vendor to rescind a contract of sale
   when the vendee fails to perform the same according to its terms,
   and a demand for the return of a deed sent to the vendor's
   agent, to be delivered upon payment of the money—the same per-
   son being the agent of the vendee—together with a notice that
   the "deal is off," is an exercise of the option and a rescission of
   the contract.

3. **Delivery of Deed.** Where the agent of a vendor receives a deed for
   the purpose of delivery upon payment of the consideration, with-
   out disclosing that he is also agent for the vendee, and places the
   deed upon record after he has been notified by the vendor that
   the contract has been rescinded for non-performance, no legal de-
   livery of the deed has been made, and the grantee acquires no
   title thereby.

APPEAL from the district court for Dawes county: WIL-
LIAM H. WESTOVER, JUDGE. *Reversed with directions.*

*Allen G. Fisher,* for appellants.

*Albert W. Crites* and *E. M. Slattery, contra.*

LETTON, C.

This is an appeal from a decree of the district court for
Dawes county enforcing specific performance of a contract
for the sale of real estate. Certain property, consisting of
a house and two lots in the city of Chadron, was owned by
one Cordelia M. Strickland, who had formerly resided at
that place, but at the time of the transaction was a resident
of Joplin, Missouri. Reynolds & Slattery were real estate
agents, doing business at Chadron. They had for several

years acted as agents for Mrs. Strickland in renting her property, paying taxes thereon and for the sale thereof. On January 20, 1903, they wrote her to the effect that they had received an offer of $1,500 for the property, and asking instructions. She answered asking further information, and on February 9 they wrote her that this was a cash offer, out of which their commission of five per cent. was to come. On February 21 she wrote she would take $1,500 net, and that they might have all over that amount which they might get at present. On March 4 they wrote they believed they had a deal closed, but the parties desired ten days in which to make arrangements to get the money; and on March 6 they wrote as follows: "We have closed a deal for the sale of your house to Mrs. Lillian Mason, and herewith hand you deed for execution. * * * We will prepare abstracts and net you $1,500 on this deal." On March 9 she wrote, accepting the offer and inclosing the deed; also informing them that she had sent two orders, one for $700 and one for $300, to her brother, Henry Maika, to whom she was indebted to the amount of $700, and requesting them to ask him to take only $300 cash, and a note for the balance of the $700 coming to him, as she wanted cash to fight water in a mine. On March 12 or 13, Henry Maika went to Slattery's office, and told him of the orders he had, to be paid as soon as the deal was closed, and was told by Slattery that the deed was defective in form and that he thought it would have to be sent back for correction. He was further told that the money was not there and that it would be there probably by the 1st of April; that Mrs. Mason was not in town and he would have to write to her. On March 13, apparently after this conversation, Reynolds & Slattery wrote to Mrs. Strickland, in substance, that they had been talking to Mrs. Mason in relation to the deal; that she would be able to raise the money by the first of next month; that she had loaned her money and the debtor had agreed to pay by that time, and that if need be she could get the money of the bank on the collateral. They further say: "Are you willing to wait

until the first of the month before the deal is closed?" No answer was sent by mail to this letter, but on March 16 Mrs. Strickland wrote, and her brother Henry Maika on March 19th presented, to Reynolds & Slattery a request for the return of the deed, and a notification that she "considered the deal with Mrs. Mason off, which was to be strictly for cash." Mr. Slattery, to whom this order for the return of the papers was presented, refused to return the deed to Mrs. Strickland, and placed it upon record that day. After the conversation with Slattery on March 12 or 13, Henry Maika negotiated a sale of the property to one John H. White, who was the tenant in possession, for $1,800, and notified his sister of that fact. She thereupon sent him a conveyance of the property to himself, which he placed on record on March 19 before demanding the return of the deed from Mrs. Mason. Up to this time Mrs. Mason had paid no money, but had caused to be left with Reynolds & Slattery on March 13 an unindorsed negotiable note for $1,200. Mr. Slattery testifies that he was acting as agent for Mrs. Mason in receiving the deed and placing the same on record, and that his firm had money of its own in the bank sufficient to pay for the deed.

This case is another example of that too numerous class in which a man attempts to serve two masters, and in which his duty to one is apt to interfere with the proper discharge of the obligation resting upon him to protect the interest of the other. We think it clear that the contract of sale with Mrs. Mason was never completed by payment according to its terms. The first letter told Mrs. Strickland that a cash offer of $1,500 had been made to her agent. This was rejected, and an offer made by her to accept $1,600 cash and to allow the agents all over $1,500 as their commission. Her letter of March 9 evidently answered the letter of March 6, in which they stated that the deal was closed. There can be no question that these letters indicate an offer for a cash transaction on the part of Mrs. Strickland. The evidence further shows that Mrs. Mason had made a cash offer for the property to the agents,

53

and this offer had been accepted. When the deed came, Mrs. Mason was not prepared to pay the cash, and an extension of time to April 1 was requested. This extension was never granted by Mrs. Strickland, but she thereupon withdrew her offer to sell for $1,600. Her brother knew of the negotiations; he also knew they had not been completed; and when he found his sister could obtain a better price for her property he notified her to this effect, and she withdrew her offer to sell at that price.

A party to a contract of sale for cash upon delivery is excused from performance if the other party at the time of performance refuses to perform, but requests an extension of time. *Beauchamp v. Archer,* 58 Cal. 431. When the deed arrived on March 13, the money was due to be paid. Instead of paying it, an extension of time was asked for over fifteen days, which was never granted. The money was not paid even then, nor at any time, until it was brought into court when this action was begun. The delivery to Reynolds & Slattery was not a delivery to Mrs. Mason, since the agency for Mrs. Mason that Slattery now asserts to have existed was not disclosed to Mrs. Strickland. Slattery could do nothing with the deed to confer any rights upon Mrs. Mason unless his acts were either authorized or ratified by his principal, Mrs. Strickland. In a legal sense the deed has never been delivered, its recording was a breach of confidence, and no rights can be acquired by such a proceeding. *Patrick v. McCormick,* 10 Neb. 1; *Soward v. Moss,* 59 Neb. 71.

The petition alleges a contract to pay $1,600 in cash for the property upon delivery of a deed; that at the time of delivery to plaintiff's agents she was ready and willing to pay the consideration money, and would have done so but for the fact of the recording of the deed to Maika. But the deed was ready for delivery on March 12, and the plaintiff notified by letter to that effect; and on the 13th, so far from being ready and willing to pay, she by her agent, Obercotter, asked for an extension of time to April 1. The evidence therefore fails to sustain the allegations of the

petition, and Mrs. Strickland had a right, upon the non-performance, to sell the property to her brother or to anyone else. It was optional with Mrs. Strickland to terminate the contract upon her vendee's failure to perform the same according to its terms, and her sale to her brother was an exercise of this option and a rescission of the contract from that time on. *Eaton v. Redick*, 1 Neb. 305. The deed has never been delivered, and is a cloud on the title of the defendant, White, who apparently is entitled to the relief which he asks in his cross-petition.

Whether or not there at any time existed a valid and enforceable contract between Mrs. Mason and Mrs. Strickland we do not find it necessary to decide. We have followed in the discussion the case as presented in the briefs and argument of counsel.

We recommend that the judgment be reversed and cause remanded, with directions to enter a decree in favor of the cross-petitioner, White, as prayed in his cross-petition.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, with directions to enter a decree in favor of the cross-petitioner, White, as prayed in his cross-petition.

JUDGMENT ACCORDINGLY.