REDDIN, Respondent, v. FRICK et al, Appellants.

(223 N. W. 50.)

(File No. 5692. Opinion filed January 15, 1929.)

278

*H. Van Ruschen*, of Salem, for Appellants.

*C. H. McCay*, of Salem, for Respondent.

BROWN, J. Otto Schab died in McCook county, leaving as his heirs his widow, Olive, and two minor daughters, Mary and Bertha. In December, 1910, the widow was appointed administrator of the estate, and in February, 1911, she was appointed guardian of the persons and estates of the two infant daughters, one of whom was then about three years of age, the other less than two. In the course of administration, the SE¼ 24—103—55, which was the family homestead at the time of Schab's death, was by order of the county court dated December 19, 1910, set apart as the family homestead of the window and the two children; and by final decree this property was set over to these three as owners in undivided shares of one-third each; and they continued to occupy it as the family homestead down to the time of the judgment in this action, the two children then being yet minors. The mother having remarried, she on July 24, 1920, presented to the county court a petition for an order authorizing her to mortgage the real estate of the minor children. This petition set forth that when Schab died there were two mortgages on the homestead aggregating $3,700; that since his death the widow had given an additional mortgage for $1,042 on her one-third interest; and that within two or three years preceding the filing of the petition as Olive M. Frick, she had expended in the neighborhood of $10,420 in the construction of a new modern house and other improvements on the land; that she had borrowed this money on her own personal notes from First National Bank of Salem; and that it was necessary to mortgage the interest of the minors as well as her own, in the land, in order to pay these notes. While it is not expressly so stated, it is inferable from the testimony of H. L. Merrick, cashier of the bank, that these notes were also signed by Jacob O. Frick, husband of Olive. By a supplemental petition filed August

11, 1920, the guardian asked authority to include in the mortgage 4.17 acres of other land left by decedent, and inherited in equal undivided shares by herself and the two infant daughters. On these petitions the county court on September 7, 1920, made an order authorizing Olive M. Frick, as guardian of the minors, to mortgage the premises in the aggregate sum of $14,800, of which $9,867 was to be on the two-thirds interest of the minors, and $4,933 on her own interest; the mortgages to run not longer than until January 6, 1926, which was the date on which the elder of the minors would attain her majority. Pursuant to this order, two mortgages were executed by Olive M. Frick individually and as guardian for her minor daughters, on the homestead premises and the 4.17 acres of other land, and the proceeds paid to First National Bank of Salem. One of the mortgages was for $10,000; the record does not show to whom it ran. The other was to plaintiff for $4,500. Default having been made in payment of interest on plaintiff's mortgage, he, on January 21, 1923, secured an order from the county court authorizing him to foreclose the mortgage by action, and pursuant to this order the present action was commenced, wherein the court entered judgment of foreclosure, and from the judgment and an order denying a new trial, defendants appeal.

The mortgages were not executed in accordance with the authority and direction given in the order of the county court. That order, while reciting that, "The said mortgages are a common indebtedness, and should be charged against the whole of the real estate so mortgaged," yet expressed the authority given in these words: "And the said Olive M. Frick is hereby also authorized to mortgage the aforesaid property in not to exceed the sum of $9,867.00 as the two-thirds share of said minors, with her share of $4,933, so that altogether there will not be a larger mortgage than $14,800.00 placed on said lands at this time, of which a two-thirds share will be that of the said minors." The mortgages executed mortgaged the minors' interest for the entire mortgage indebtedness of $14,500; whereas, the order of the county court expressly provided that their interest should not be mortgaged in a sum exceeding $9,867. It would seem that the mortgages given on the minors' interest would be void, because not executed in pursuance of any authority given by the county court.

■ On another ground the mortgage to plaintiff of the interest of the minors must be deemed invalid: "The purposes for which the real estate of a ward may be mortgaged are generally prescribed by the statute authorizing the mortgage, and the court cannot authorize a mortgage for any other purpose than that prescribed; if it does so, the mortgage is a nullity." 28 C. J. 1206, § 358. The statutes of this state do not specifically prescribe the purposes for which a guardian may be authorized to mortgage his ward's real estate. They provide that the guardian may, by leave of the county court, mortgage the real property of his ward; but this can only be done after an order authorizing the mortgage to be given has been made by the county court upon a finding that the interests of the ward and of the estate require the mortgage to be made. Respondent contends that this gives the county court authority to authorize the mortgaging of a ward's real estate for any purpose whatever; that there is no restriction under the statute; and that it must be assumed that the county court exercised its discretion rightly in ordering the execution of this mortgage. In support of this contention, he says that our statutory provisions authorizing the mortgaging of a ward's real estate were adopted from Illinois, and that the Supreme Court of that state, as also the Supreme Court of the United States in a federal case going up from Illinois, have in effect so decided. In a long quotation, covering about 14 pages of his brief, from U. S. Mortgage Co. v. Sperry, 138 U. S. 313, 11 S. Ct. 321, 34 L. Ed. 969, is this sentence: "We are of the opinion that the legislature intended to commit the whole subject of the mortgaging the estate of wards, primarily to the guardian, subject to certain restrictions, some of which are expressed in the statute, while others are necessarily implied from its provisions. The express restrictions are—First, that he obtain leave of the County Court, based upon a petition setting out the conditions of the estate; the facts and circumstances on which the petition is founded; a description of the premises to be mortgaged. Second, that the mortgage, if in fee, must be for a term of years not extending beyond the minority of the ward. Third, that the time of the maturity of the indebtedness secured by it should not extend beyond the minority of the ward. * * * We have seen that the express restrictions of the statute were all observed in the proceedings of the County Court." The place in the

foregoing quotation which appellant has supplied with asterisks is occupied in the opinion of the Supreme Court with a statement of the law which is of vital importance in the case at bar. That statement is as follows: "The implied restriction, controlling the discretion and power both of the guardian and county court, is, that the indebtedness secured by the mortgage must arise out of and have some necessary or appropriate connection with the management of the ward's estate."

In this case the great bulk of the indebtedness secured by the mortgage, and paid off with the proceeds of the mortgage, had no necessary or appropriate connection with the management of the wards' estate. Of the mortgage indebtedness paid off, only $3,700, with some accrued interest, was a lien on the land, and this was on the entire estate in the land, including the widow's one-third as well as the minors' two-thirds, so that equitably only two-thirds of this amount, or approximately $2,500, would be an incumbrance on the interest of the minors; the remainder of the existing incumbrance was a separate mortgage of $1,042 on the undivided one-third interest of the widow alone. The additional indebtedness of $10,000 for which the guardian has undertaken to mortgage the interest of the minors was a personal obligation which she alone (or possibly in conjunction with her husband) owed to the First National Bank of Salem, and which had been incurred from two to three years previous to her application for leave to mortgage the minors' interest to pay off this personal indebtedness. It is true she incurred this indebtedness for improvements put upon the real estate, a modern house, a large barn, and other conveniences for herself and her present husband, which the minors as members of the family have, to some extent, had the use of. They were not consulted as to these expenditures; they had no power to authorize them or to concur in them; no court was asked to pass upon their reasonableness or propriety. The guardian and her husband seem to have gone into the matter of making these improvements on their own account, and First National Bank of Salem evidently loaned the money on the personal notes of Olive M. Frick or the notes of her and her husband. The county court had no authority to make an order authorizing the mortgaging of the minors' interest to pay the debts of those who were strangers to the minors' estate. Stockyards National Bank v. Bragg, 67

Utah, 60, 245 P. 966. The Utah statute under which this case was decided authorized the guardian to mortgage the ward's property upon an order of the court, when it appears to the satisfaction of the court that it is for the best interest of the estate that it be mortgaged. It will be observed that this statue is subsantially the same as ours, and it was held in that case that the court could not authorize the mortgaging of the minors' real estate to secure the obligation of another, and that the court was without jurisdiction to authorize the guardian to mortgage the minors' property to protect the interest of the minors in capital stock of a failing corporation, which interest was subject to a life estate of their mother.

 It is contended that under our statute the decision of the county court on an application to mortgage a minor's real estate is final and conclusive unless appealed from; that it is not subject to collateral attack; that, since no appeal was taken in the present case, the validity of the mortgage cannot be questioned in a proceeding to foreclose it; and that any other view fails to recognize the distinction between erroneous decision and lack of jurisdiction. The distinction between erroneous decision and lack of jurisdiction has not escaped our attention, but: "In addition to jurisdiction of the parties and the subject-matter, it is necessary to the validity of a judgment that the court should have jurisdiction of the question which its judgment assumes to decide, and jurisdiction to render a judgment for the particular remedy or relief which the judgment undertakes to grant. A judgment not authorized by law is void." 33 C. J. 1076, § 37, notes 70-72. In Glover v. Brown, 32 Idaho, 426, 184 P. 649, the principle is stated in the following language: "Even though a court has jurisdiction over the subject-matter and the parties, if it proceeds to dispose of matters over which it is not authorized to act or to grant relief of a character which it has no power to grant, its judgment is in this respect void. Anthony v. Kasey, 83 Va. 338, 5 S. E. 176, 5 Am. St. Rep. 277, 278; Furman v. Furman, 153 N. Y. 309, 47 N. E. 577, 60 Am. St. Rep. 629, and note at 643, 644; Day v. Micou, 18 Wall. 156, 21 L. Ed. 861; Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872; In re Klumpke's Estate, 167 Cal. 415, 139 P. 1062; Freeman on Judgments, § 116, p. 176." In this case it was held that a decree of distribution of a probate court, distributing the decedent's estate contrary to the law of succession, was void, and,

although not appealed from, could be questioned in a subsequent action to quiet title by the heir who interests were affected by the decree. The Supreme Court of Idaho said that the action to quiet title was not a collateral attack on the decree of distribution, but a direct attack. In Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914, it is said: "The doctrine invoked by counsel, that, where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however, erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application. * * * Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. * * * The doctrine stated by counsel is only correct when the court proceeds, after acquiring jurisdiction of the cause, according to the established modes governing the class to which the case belongs, and does not transcend, in the extent or character of its judgment, the law which is applicable to it." See, also, Knickerbocker Trust Co. v. Oneonta, C. & R. S. Ry. Co., 201 N. Y. 379, 94 N. E. 871.

One of the essentials of a valid judgment is that the court pronouncing it must have jurisdiction not only to hear and determine the general class of actions of which that before it is one, but also the power to render the particular judgment in the particular case. Russell v. Shurtleff, 28 Colo. 414, 65 P. 27, 89 Am. St. Rep. 216. "A judgment is void when it affirmatively appears from the inspection of the judgment roll that any one of three following jurisdictional elements are absent: First, jurisdiction over the person; second, jurisdiction of the subject-matter; and third, judicial power to render the particular judgment." Winona Oil Co. v. Barnes, 83 Okl. 248, 200 P. 981. In Oklahoma the county court had jurisdiction, where the court found it for the best interests of the minor, to authorize a guardian to sell an oil and gas lease in the land of his ward; but a rule of the Supreme Court provided that no such lease should be approved except after sale in open court to the highest responsible bidder, and it was held in this case that an order of the county court, finding that it would be to the best interest of the ward that a lease be executed

to Winona Oil Company for a specified consideration, without compliance with the rule, was void upon its face.

■ In Pettis v. Johnston, 78 Okl. 277, 190 P. 681, the court said: "A judgment which is void upon its face and requires only an inspection of the judgment roll to demonstrate its want of validity is a 'dead limb upon the judicial tree which may be lopped off at any time.'" In Title Guaranty & Surety Co. v. Foster, 84 Okl. 291, 203 P. 231, the three elements of jurisdiction stated in Winona Oil Co. v. Barnes, supra, are reiterated, and the court holds that, if either one of these three elements is shown by the judgment roll to be lacking, the judgment is void and may be attacked collaterally.

The petition and supplementary petition for authority to make a mortgage in the case at bar showed upon their face that the purpose of the mortgages was in the main to pay the personal obligations of Olive M. Frick and her husband, Jacob Frick, a purpose for which the court had no power to authorize the mortgaging of the minors' real estate, under the principles laid down by the Supreme Court of the United States in the case of U. S. Mortgage Co. v. Sperry, supra. The order authorizing the mortgages referred to the petition and supplementary petition, and found that the facts therein set forth were true; in other words, found that the guardian desired to mortgage the minors' real estate to pay the personal debts of herself and husband. All this appeared on the face of the judgment roll.

■ It appears from the evidence that the petitions were made and filed at the solicitation and by the advice of the officers of the bank, of which plaintiff at the time was vice president, and to which the debts to be paid by the proceeds of the mortgages were owing. The court's finding that the proceeds of both these notes and mortgages, the $10,000 one and the one involved in the present action, were received by the First National Bank of Salem, is correct; but the further finding, that such proceeds were received by the bank for the guardian of the minors, is unsupported by any evidence, as is also the finding that plaintiff had no knowledge or information of the disposition of said funds. He was an active officer of the bank, and it is inconceivable that over $14,000 could come into his bank and be at once applied to the payment of notes of Olive and Jacob Frick to the bank without his knowing any-

thing about where it came from·or where it went to. In any event, when he took a mortgage on the real estate of minor children, he was bound to know what the records disclosed as to the authority of the guardian to give such a mortgage, and an examination of the petitions and order of the county court would have disclosed to him that the mortgage he was taking, expressly stating that it was subject to a $10,000 mortgage dated only five days earlier and both given, as described by the petition and order, for the purpose of paying the obligations of persons other than the minors, was not authorized in law, and therefore void.

The judgment and order appealed from are reversed.

SHERWOOD, P. J., and POLLEY and BURCH, JJ., concur.

CAMPBELL, J. (dissenting). Granting that the decision of the county court was erroneous, I think nevertheless that such court had jurisdiction, and that its determination is not open to collateral attack. It is my opinion that the judgment and order appealed from should be affirmed.