NEWTON, Appellant, v. ERICKSON et al., Repsondents

(41 N. W.2d 545)

(File No. 9046. Opinion filed February 27, 1950)

Rehearing denied April 11, 1950

**E. G. Jones,** Sioux Falls, **Boyce, Warren, Murphy & McDowell,** Sioux Falls, of counsel, for Appellant.

**Everett A. Bogue,** Vermillion, for Respondents.

**Lee H. Cope,** Yankton, Amicus Curiae.

SICKEL, J. This is an action to quiet the title to a one-fourth interest in a section of land located in Clay County. Alfred Newton owned the land free from encumbrances at the time of his death on February 28, 1915. He left a will and codicil which were admitted to probate in the county court on April 5, 1915. The codicil provided: "I hereby desire to change by former will so that all of the children of my son Charlie J. Newton shall share equally in the real property of which I die seized and possessed, share and share alike, subject to the life estate in and to the same in my son Charlie J. Newton, whose life estate in said real property is subject to a life estate in my wife, meaning and

intending that both my said wife and son shall each have a life estate in said real property and that at their death the same shall descend to and vest in the said children of my said son Charlie J. Newton."

The testator was survived by his widow Julia Newton, who died March 3, 1915, Charley J. Newton, a son, and Annie Mullarkey, a daughter. At the time of testator's death the children of Charley J. Newton consisted of Clarence Newton, born January 5, 1911, and Alfred V. Newton, born August 18, 1912. The final decree in the probate proceedings was entered on March 5, 1918. That instrument quotes the will and codicil and distributes this land as follows: "to Charlie J. Newton, a life estate in and to all of Section Nine, in Township Ninety-five, Range Fifty-two, in Clay County, South Dakota, to be his property for and during the term of his natural life; and also a life estate in and to the residue or balance of said personal property, in the sum of $1454.37; to Clarence Newton, and to Alfred V. Newton, grandsons of said decedent and the only children of Charlie J. Newton, the son of said decedent, and to any other child or children of said Charlie J. Newton that may hereafter be born, an estate in fee simple in and to all of said Section Nine, Township Ninety-five, Range Fifty-two, in Clay County, South Dakota, to be their property absolutely and forever, in equal parts, share and share alike, subject to the life estate in and to the same in their father, Charlie J. Newton."

The after-born children of Charley J. Newton were Edwin, born January 13, 1920, and Delmar, born January 30, 1926. Charley J. Newton was appointed guardian of his four minor children on November 9, 1926. Then followed a series of mortgages covering the remainder interest of the minors in the land. All of these mortgages were made to secure the personal obligations of Charley J. Newton, one of the life tenants. The amount of these mortgages reached $17,000 in 1936.

In May, 1937 Charley J. Newton and his two oldest sons brought an action in the circuit court against the two after-born children, Edwin and Delmar, then aged seventeen and eleven years respectively, for the purpose of quiet-

ing title of the plaintiffs in the section of land. The complaint in that action alleges the ownership of the land by Alfred Newton, his death, the will and codicil, the relationship of the parties, and the final decree in the probate proceedings; that the decree is ambiguous and uncertain in its terms and that it is susceptible of various interpretations none of which conform to the true meaning of the will and codicil; that the will actually constitutes a bequest of a life estate in this land to Charley J. Newton with the remainder to his two oldest children. The complaint asks that it be decreed that the after-born children of Charley J. Newton have no right, title or interest in the land. A guardian ad litem, appointed for the two after-born children, served and filed an answer denying that either the will or the decree is ambiguous or uncertain in its terms, and alleging that by the terms of both the will and the decree the remainder interest in the land is vested in the four children of Charley J. Newton. The court made findings of fact in accordance with the allegations of the complaint and then interpreted the will and decree to mean that the entire remainder is vested in the two oldest sons of Charley J. Newton; that neither of the defendants Edwin Newton nor Delmar "has nor has either ever had any right, title or interest in and to the said premises, or any part thereof." The judgment bars the defendants from asserting any interest in the land.

Within the period of a month after the decree was entered the two oldest sons filed in the county court a petition asking that the final decree be "opened and corrected" alleging substantially the same facts as were set out in the complaint in the quiet title action. The complaint, findings, conclusions of law and judgment, entered in the quiet title action were by reference made a part of this petition. After hearing on the petition the court ordered that the decree of distribution entered on March 5, 1918, be amended by striking therefrom that clause of the decree which has been quoted above and by substituting therefor the following: "* * * to Clarence Newton, and to Alfred V. Newton, grandsons of said decedent, and the only children of Charlie J. Newton, the son of said decedent, at the death of said de-

cedent, an estate in fee simple absolute in and to all of said Section Nine, Township Ninety-five, North, of Range Fifty-two West of the 5th P. M. in Clay County, South Dakota, to be their property absolutely and forever in equal parts, share and share alike subject to the life estate in and to the same in their father, Charley J. Newton." This amendment of the decree was made by the court upon the ground that the final decree as originally entered was "erroneous, and not in accordance with decedent's will, and should be stricken therefrom"; that the true meaning of the will of decedent as well as of the decree was to vest and assign unto the two children of Charley J. Newton in being at the time of the death of Alfred Newton, the realty in fee simple. On April 22, 1938, Charley J. Newton and his wife conveyed their interest in the land to their two oldest sons. On December 26, 1942, E'dwin Newton conveyed his interest in the land to his mother Lucille Newton. Then Charley J. Newton, his wife, and their sons Alfred, Clarence and Delmar joined in conveying the East Half of Section 9 to Sigfrid Erickson pursuant to an executory contract of sale.

Upon attaining his majority, and within a year thereafter Delmar Newton brought this action claiming to be the owner of a fourth interest in the entire section of land by virtue of the will and decree of distribution made in the estate of his grandfather Alfred Newton, deceased. The complaint in that action alleges that Delmar Newton was less than eighteen years of age when he signed the deed purporting to convey his interest in the east half of said section to Erickson. He also alleges that said decree was a judgment of the county court from which no appeal was ever taken and that it is therefore final and conclusive; that the circuit court was without jurisdiction, power or authority to construe, revise or alter the terms of the final decree in said estate, and that therefore the judgment of the circuit court entered June 26, 1937, is void. He also alleges that the order of the county court amending the final decree was without authority of law, power or jurisdiction. He disaffirms the conveyance signed by him while he was a minor and asks judgment to the effect that the title to a one-fourth interest in the section of land be quieted to him.

■ Appellant proposed findings of fact and conclusions of law to the effect that the deed executed by him is void. This request was refused by the circuit court, and the ruling is assigned as error. The facts are undisputed. The deed was executed by appellant at the time he was under the age of eighteen, and it was disaffirmed by him within one year after attaining his majority. ·These facts establish the invalidity of the deed, subject to the duty of grantor, if any, to do equity. SDC 43.0103, 43.0105; Gruba v. Chapman, 36 S.D. 119, 153 N.W. 929.

■ The evidence shows that appellant received none of the consideration paid by Erickson for the half section of land purchased by him. While part of the purchase price was paid to the Connecticut General Life Insurance Company for discharge of a mortgage, the indebtedness represented by the mortgage was entirely the personal obligation of Charley J. Newton, holder of the life estate. Appellant could not be required to make restitution of a consideration which he did not receive for the execution of an invalid deed. Reddin v. Frick, 54 S.D. 277, 223 N.W. 50.

■ Respondent Erickson also calls attention to the fact that he, as purchaser made valuable improvements upon the land after taking possession thereof under his deed, and contends that he is entitled to some form of restitution therefor. These improvements form no part of the consideration· for the deed. Erickson acquired the life estate of Charley J. Newton and a three-fourths interest in the land by the execution of the deed. He, therefore, became the owner of a life estate in the one-fourth interest of appellant and a tenant in common with appellant in the entire half section. The improvements, to which respondent refers, were made by Erickson during the time when appellant was a minor or while this action was pending, for his own benefit, and without the consent or agreement of appellant. The evidence also shows that Erickson, personally or through his attorney, knew before the conveyance was made and the consideration paid, that appellant was a minor when he executed the deed. He is therefore not entitled to reimbursement for the sums expended for improvements and placed by him upon the property, as a condition pre-

cedent to a cancellation of the deed. Johnson v. Hendrickson, 71 S.D. 392, 24 N.W.2d 914.

The next question presented by this appeal is whether the circuit court had the jurisdiction or power in the 1937 quiet title action to revise or alter the terms of the final decree so as to deprive the appellant of the one-fourth interest in the land which was distributed to him by the county court. Respondent contends that the quiet title action was one brought to determine the title to real property, and as such was within the equitable jurisdiction of the circuit court. It is provided by our state constitution, Art. V, § 20, that the county courts "shall have original jurisdiction in all matters of probate, guardianship and settlement of estates of deceased persons". It is also provided by Art. V, § 14 of the constitution that "The circuit courts shall have original jurisdiction of all actions and causes, both at law and in equity * * *". The first provision of the constitution quoted above confers upon the county courts of this state unlimited probate jurisdiction, and all matters related to such jurisdiction must be first adjudicated in the county courts. The equity jurisdiction of the circuit courts in probate matters extends to special or exceptional cases only. Its jurisdiction is limited to those cases in which the probate jurisdiction of the county court is inadequate or insufficient, such as those involving fraud or waste, Welsh v. Krause, 38 S.D. 264, 161 N.W. 189; contracts among the heirs in regard to estate property, Ward v. DuPree, 16 S.D. 500, 94 N.W. 397; accounting for assets in the possession of an heir, Jacquish v. Deming, 40 S.D. 265, 167 N.W. 157; quiet title actions in which the right of redemption from a tax sale is involved and is dependent on heirship. Doling v. Hyde County, 70 S.D. 339, 17 N.W.2d 693. The competency or incompetency of the county court to deal adequately and completely with plaintiff's rights is the deciding factor in determining the jurisdiction of the circuit court in probate matters. Welsh v. Krause, 38 S.D. 264, 161 N.W. 189; Haugen v. Peterson, 63 S.D. 492, 260 N.W. 826; Howe v. Larson, 68 S.D. 203, 299 N.W. 876. Here there were no special circumstances, no equitable issues which the county court could not and did

not previously deal with adequately and completely in the probate proceeding.

██ ██ The constitutional powers of the county court are regulated by the Code of Probate Procedure. SDC 35.-1708 provides that the decree of final distribution "must name the persons and proportions or parts to which each shall be entitled". This authority necessarily includes the power to construe wills when such construction is necessary to a settlement and distribution of the estate. In re Sjurson's Estate, 29 S.D. 566, 137 N.W. 341; Thompson v. Lake Madison Chautauqua Ass'n., 41 S.D. 351, 170 N.W. 578; Woolley v. Woolley, 52 S.D. 193, 217 N.W. 196; Kirby v. Western Surety Co., 70 S.D. 483, 19 N.W.2d 12; Higgins v. Higgins, 71 S.D. 17, 20 N.W.2d 523; Bechard v. Union County, 71 S.D. 558, 27 N.W.2d 591. The above statute also declares that "Such decree is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal." Here the county court acted within its jurisdiction in construing the will and no appeal was taken. Its decree cannot be reversed, set aside, or modified in a quiet title action on the ground that it does not express the will of the testator. Thompson v. Lake Madison Chautauqua Ass'n., supra; Woolley v. Woolley, supra; Higgins v. Higgins, supra; Bechard v. Union County, supra.

██ The only other question presented to the circuit court in the 1937 quiet title action was whether the final decree of the county court is ambiguous. If such ambiguity existed it was within the power of the circuit court to declare the meaning of the language used by the county court in the decree. 49 C.J.S., Judgments, § 436. Language is ambiguous when it is reasonably capable of being understood in more than one sense. The final decree as quoted herein assigns to Charley J. Newton a life estate in section 9, and to Clarence Newton, Alfred Newton and any other children of Charley J. Newton born after the entry of the decree, all the remainder, share and share alike. It is susceptible of no other interpretation.

██ But, respondent contends that because the complaint in the 1937 quiet title action alleged the ambig-

uity of the decree of distribution, and the answer of the guardian ad litem denied such ambiguity, the circuit court had jurisdiction of the subject-matter and of all the parties to the cause; that a bona fide issue on the question of ambiguity was presented to the court for determination, that this issue was determined, and that no appeal was taken; that therefore the judgment of the circuit court is final. It is a fact, as respondent says, that the complaint in the quiet title action alleged ambiguity of the decree of distribution, but ambiguity is not established by the mere assertion that the language of the decree is susceptible of more than one interpretation. Cramer v. American Alliance Ins. Co., 72 S.D. 509, 37 N.W.2d 192. The complaint set out verbatim the pertinent provisions of the will and also the distribution clause of the decree, whereby it is shown on the face of the complaint that the decree was not ambiguous. It also appears from the record that the circuit court did not decide that the decree of distribution was ambiguous. It decided "That the true meaning of the will of decedent, and of the said decree entered in the County Court of Clay County, South Dakota, in the matter of the estate of Alfred Newton, deceased, was, and is, to vest and assign unto Julia Newton, surviving wife of decedent, a life estate, and unto Charley J. Newton, son of decedent, a life estate, and to the two children of Charley J. Newton in being at the date of the death of Alfred Newton, February 28, 1915, Charles Clair Newton and Alfred Vernon Newton, the remainder in fee absolute * * *". This finding is to the effect that the decree of distribution did not mean what it said in unequivocal language. The judgment in effect modified the decree of distribution to conform to the court's interpretation of the will though the court's decision is couched in language so contrived as to give the impression that it constitutes an interpretation of an ambiguous document. One cannot escape the conclusion that the court attempted to purge the decree of what it considered an erroneous interpretation of the will. This the circuit court had no power to do. Reddin v. Frick, 54 S.D. 277, 223 N.W. 50; Acker v. Adamson, 67 S.D. 341, 293 N.W. 83, 85; Hardin v. Graham, 38 S.D. 57, 159 N.W. 895; Lessert v. Lessert, 64 S.D. 3, 263 N.W. 559; Equitable Life Assur-

ance Society v. Lunning, 64 S.D. 168, 265 N.W. 876; Abelleira v. District Court, 17 Cal.2d 280, 295, 109 P.2d 942, 132 A.L.R. 715; Wells Fargo & Co. v. City and County of San Francisco, 25 Cal.2d 37, 152 P.2d 625; State ex rel. Sullivan v. Reynolds, 209 Mo. 161, 107 S.W. 487, 15 L.R.A.,N.S., 963, 123 Am.St.Rep. 468, 14 Ann.Cas. 198; Garner v. Garner, 182 Or. 549, 189 P.2d 397; 21 C.J.S., Courts, § 25. In the 1937 quiet title action the circuit court had jurisdiction of the subject-matter and of the parties in the fundamental sense, but it had no power to act in any other manner than to dismiss the action on the merits. It is clear upon the face of the complaint and from the entire record that the action to quiet title in 1937 was simply an attempt to change the county court decree long after the time to appeal therefrom had expired. The quiet title action was nothing more than a sham, and the fact that the trial court failed to discern the pretense did not confer jurisdiction upon that court, or give to the court power it would not otherwise have had. It is stated in the case of Binderup v. Pathe Exchange, 263 U.S. 291, 44 S.Ct. 96, 98, 68 L.Ed. 308: "Jurisdiction, as distinguished from merits, is wanting * * * where the claim set forth in the complaint is so unsubstantial as to be frivolous, or, in other words, is plainly without color of merit."

██ The petition filed in the county court asking that the final decree "be opened and corrected" alleged substantially the same facts as those set out in the quiet title action and to which we have already referred herein. The question here presented is whether the county court, in amending the original decree, acted within its jurisdiction or whether the original decree became final on the expiration of the time for appeal. A similar question was considered by this court In re Loevinger's Estate, 40 S.D. 450, 167 N.W. 726, 727. In that case the county court amended the final decree nunc pro tunc nine years after the entry of the original decree. An appeal was taken from the amendatory order. The record showed that the distribution by the county court was based upon a will which created a trust in favor of Moritz Loevinger with the remainder to his heirs. The original decree as entered omitted any reference

to the trust. After the entry of the decree the trust was carried out by the trustees appointed in the will according to the will. Petition for amendment of the decree was filed, notice of hearing given, and the amendment was made according to the petition. The county court found that the original decree was entered by mistake and inadvertence of the county court and the executor, and that it was the intention of the court to distribute the estate in accordance with the will. In disposing of the case this court said: "All courts of record have inherent power to make their judgments correspond with the real judgment intended, and lapse of time, where other rights do not intervene, does not take away such power. * * * This rule in no way militates against the provisions of section 308, Prob. Code [now SDC 35.1708] because that section refers to the real judgment of the court and not necessarily to the paper expression of it." In that case there was no doubt that the court intended by the judgment to preserve the trust created by the will, and all the parties interested acquiesced in and performed the trust according to the terms of the will, not according to the decree, for nine years after the entry of the original decree. A mistake was clearly established by the record. The intent of the court was not challenged. Here there is no evidence to show that the county court intended to distribute the property otherwise than as provided by the terms of the original decree. That decree expressed the court's interpretation of the will. The decree in this case remained unquestioned for nineteen years after its entry. In the order amending the decree the county court did not find that the original decree was entered through the mistake of the county court or of any of the parties concerned, or that the decree did not express the intention of the court at the time. The amendatory order was signed by a county judge other than the one who signed the original decree. It finds only that the original decree was erroneous and that it does not express the true meaning of the will. According to these facts the county court had no jurisdiction to amend the original decree. The exclusive remedy of the plaintiffs in this case was by appeal from the original decree of distribution, as provided in SDC 35.1708.

The judgment of the circuit court is reversed and the case remanded for further proceedings as herein indicated.

RUDOLPH, J., concurs.

HAYES, P.J., concurs specially.

ROBERTS and SMITH, JJ., dissent.

HAYES, P. J., (specially concurring). I concur in the opinion by Sickel, J., with the exception of the statement therein, to-wit: "In the 1937 quiet title action the circuit court had jurisdiction of the subject-matter and of the parties in the fundamental sense, * * *".

Assuming that the phrase, "jurisdiction of the subject-matter", is used here in referring to the nature and form of the proceeding instituted in circuit court in 1937 I readily subscribe to the quoted declaration. On the other hand, if this phrase is intended to imply that the circuit court had jurisdiction in any sense over the unambiguous county court decree I desire not to be bound by such implication.