**Larry TITSWORTH and Louis Wardlow, d/b/a El Tee Cattle Company, a Partnership**

v.

**Orville L. HANZLIK et al.**

**No. Civ. 74–5024.**

United States District Court, D. South Dakota.

July 3, 1975.

Dennis H. Hill, Costello, Porter, Hill & Nelson, Rapid City, S. D., for plaintiffs.

Keith R. Smit, Mormon, Smit & Shepard, Sturgis, S. D., for Hanzlik.

Hermon B. Walker, Sturgis, S. D., for Hotchkiss.

## MEMORANDUM OPINION

BOGUE, District Judge:

This is an action for specific performance and damages for the alleged breach

of a realty purchase agreement, which was tried to the court on November 25 and 26, 1974, in Rapid City, South Dakota. The plaintiffs, Larry Titsworth and Louis Wardlow, citizens of the states of Arizona and Texas, respectively, brought this action against the defendants, all of whom are citizens of the state of South Dakota. The jurisdiction of this Court is based upon diversity of citizenship and the requisite jurisdictional amount. 28 U.S.C. § 1332(a).

On March 6, 1973, defendant Orville L. Hanzlik, entered into a real estate listing agreement with Reuben Vollmer, a real estate broker, for the proposed sale of his farm, which was located in Meade County, South Dakota. A short time thereafter, Mr. Vollmer contacted Mr. Larry Titsworth, one of the plaintiffs in this action, to see if he would be interested in purchasing the Hanzlik property. Mr. Titsworth indicated that he was not personally interested, but that the partnership of which he was a partner, El Tee Cattle Company, may be interested in purchasing the property. After consulting with both of the partners Mr. Vollmer made arrangements for them to come to South Dakota and look over the ranch. Thus, on March 13, 1973, both of the plaintiffs travelled to South Dakota to view defendant Hanzlik's farm. Both of the plaintiffs, in the company of Mr. Vollmer and defendant Hanzlik, viewed the ranch, and had a general conversation about the selling price that Mr. Hanzlik was asking. On the next day Mr. Hanzlik and his wife met with the plaintiffs in their motel room in Sturgis, South Dakota, to further discuss the terms of sale for the ranch.

When the defendant Hanzlik and his wife arrived at the plaintiffs' motel room, the plaintiffs were in the process of drawing up what has been identified in these proceedings as plaintiffs' Exhibit No. 2. Defendant Hanzlik and his wife were there for approximately two hours, with most of the time being spent discussing the terms which the plaintiffs intended to incorporate within their proposal to the Hanzliks. At the end of the meeting it would appear that the plaintiffs' proposal (Plaintiffs' Exhibit No. 2) was tendered to Mr. Vollmer along with a thousand dollar check payable to defendant Hanzlik. Defendant Hanzlik did not at that time sign the proposal, but stated that he wished to speak with his attorney concerning the proposed sale.

After this meeting, Mr. Hanzlik maintained possession of the plaintiffs' proposal (Plaintiffs' Exhibit No. 2) for a period of seven or eight days. During this period of time Mr. Hanzlik was contacted on several occasions by Mr. Vollmer concerning the status of the proposed sale to the plaintiffs. The plaintiff testified that the basic substance of these conversations were that Mr. Vollmer was prompting him to sign Plaintiffs' Exhibit No. 2 so that he could work for better terms of sale. Thereafter, on the 22nd day of March, 1973, Mr. Hanzlik returned Plaintiffs' Exhibit No. 2, bearing his signature, to Mr. Vollmer along with a cover letter (Plaintiffs' Exhibit No. 6). Mr. Vollmer then contacted the plaintiffs indicating that Mr. Hanzlik had signed Plaintiffs' Exhibit No. 2 and that they could proceed to contact their lawyer for the necessary legal arrangements.

On or about April 3, 1973, Mr. Hanzlik and Mr. Vollmer went to the offices of Mr. Russell Molstad, who is an attorney practicing law in Sturgis, South Dakota. At this meeting Mr. Hanzlik and Mr. Vollmer informed Mr. Molstad of the proposed sale of the Hanzlik ranch to the El Tee Cattle Company. Mr. Vollmer and Mr. Hanzlik brought with them an earnest money contract (Plaintiffs' Exhibit No. 5) which had been prepared by the plaintiffs' attorney in Texas. After a brief discussion of the terms incorporated therein, Mr. Molstad advised them that the earnest money contract should not be entered into. His basis for this advice being that a contract for deed arrangement would be more beneficial to Mr. Hanzlik. Mr. Molstad testified that he was not made aware during this meeting, nor the next meeting with these individuals, of the

existence of Plaintiffs' Exhibit No. 2. After advising Mr. Hanzlik not to enter into the earnest money contract with the plaintiffs, he commenced negotiations with a Mr. Eugene Mayer of Pierre, South Dakota, who was acting as the plaintiffs' attorney in South Dakota. At a second meeting with Mr. Vollmer and Mr. Hanzlik which occurred on April 10, 1973, Mr. Molstad was advised by Mr. Vollmer that the El Tee Cattle Company might be interested in buying on a contract for deed. Based upon this information, Mr. Molstad prepared a proposed contract for deed and sent it to Mr. Mayer in Pierre, South Dakota, who in turn forwarded the proposed contract for deed to Mr. Larry Titsworth.

It is safe to say at this juncture that Mr. Molstad's proposed contract was not accepted by the plaintiffs in this action, and thereafter the negotiations disintegrated and brought about the present lawsuit. These basic facts set the stage for a discussion of the legal arguments involved in the present case. For the sake of clarity, other pertinent facts may be referred to in the discussion of the legal issues involved.

The first and fundamental issue that this Court must decide is the meaning and effect of Plaintiffs' Exhibit No. 2. The plaintiffs' contention is that this exhibit constitutes a contract for sale entered into and executed by the plaintiffs and the defendant, Orville Hanzlik, for the sale of his ranch in Meade County, South Dakota. The defendant, on the other hand, contends that Plaintiffs' Exhibit No. 2 has no legal force or significance whatsoever. Since the meaning of the exhibit itself is in question, it will be set forth in full for the sake of clarity.

March 14, 1973

Reuben Vollemer
Box 154
Miland, South Dakota
Dear Reuben,

This is to confirm my offer for the purchase of the Orville Hanzlick ranch consisting of approx. 6640 acres located in Meade Co. So. Dakota.

Enclosed find check for $1,000 which you will hold as earnest money for the above described property.

My understanding of the proposed agreement of purchase is as follows:

1. Merchantable title shall be conveyed by Warranty Deed properly signed and with the necessary revenue stamps affixed thereto for recording. An Abstract of Title shall be continued to date and furnished promptly to the Buyer for examination, or in lieu of an Abstract of Title, Title Insurance may be substituted at Seller's expense.

2. I agree to pay at the time of closing date $25,800.00 pre paid interest plus $18,200.00 cash at closing date and a $15,000.00 note due Sept. 30, 1973, as part payment of principal. The remaining balance of $38.85 per acre to be paid over a period of 20 years. Starting one year after closing date and for each of the three consecutive years interest of 6% only on the principal will be due. Starting the fifth year on the same date the first amortized payments consisting of 6% interest and principal will be due and on each succeeding year at that same date until paid in full.

3. Taxes, insurance, etc. shall be prorated as of closing date.

4. Possession goes to buyer at closing date.

5. ½ interest mineral rights retain by Mr. Hanzlick should revert to me after ten years if there is no production in that time.

Reuben will you please have Mr. Hanzlick sign this letter if he is in agreement.

Very truly yours,
Larry Titsworth
Larry Titsworth
El Tee Cattle Co.
Orville Hanzlik

In determining the legal significance of a writing, the applicable rule of law requires that "a contract should be considered as a whole and all

of its parts and provisions will be examined to determine the meaning of any part. The intention of the parties is to be ascertained from the entire instrument and not from detached portions." *Eberle v. McKeown*, 83 S.D. 345, 159 N. W.2d 391, 393 (1968). In reviewing the entire writing this Court can only conclude that the document is ambiguous at best. The plaintiff contends that this is a contract for the sale of the defendant's real estate, however, with statements such as "this is to confirm my offer for the purchase of the Orville Hanzlick ranch . . . ."; "My understanding of the proposed agreement of purchase is as follows"; "½ interest mineral rights retain by Mr. Hanzlick *should* revert to me after ten years if there is no production in that time"; and "Reuben will you please have Mr. Hanzlick sign this letter if he is in agreement", this intention, if it exists, is not readily apparent from the face of the document.

When a writing is said to be ambiguous, that is, "when it is reasonably capable of being understood in more than one sense," *Newton v. Erickson*, 73 S.D. 228, 41 N.W.2d 545 (1950), a court is allowed to examine extrinsic evidence of the circumstances surrounding the execution of the writing in order for it to make a proper interpretation of the parties' intentions. *See, Jones v. American Oil Company*, S.D., 209 N.W.2d 1 (1973); *Huffman v. Shevlin*, 76 S.D. 84, 72 N.W.2d 852 (1955). A corollary rule of construction also requires that when a writing is drafted by one of the parties, ambiguous language in the writing should be construed most strongly against the drafting party who caused the uncertainty to exist. *Jones v. American Oil Company*, S.D., 209 N.W.2d 1, 4 (1973); *Weisser v. Krotuenske*, 55 S.D. 558, 226 N.W. 760 (1929). With these two basic principles in mind this Court is compelled to conclude that a contract was never created by the parties. The ambiguous nature of the terms set forth in the writing could lead a man of ordinary sensibilities to conclude that Plaintiffs' Exhibit No. 2 was not intended to constitute a contract for the sale of real-

ty. Thus, upon reviewing the evidence and demeanor of the witnesses it is the conclusion of this Court that Mr. Hanzlik did not understand Plaintiffs' Exhibit No. 2 as being a proposed contract for the sale of his ranch, which would be binding upon him when he signed it.

Therefore, it is the conclusion of this Court that a valid contract for sale was never entered into between the parties for the sale of defendant's ranch, and the plaintiffs' complaint should be dismissed. The foregoing Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. The prevailing party shall prepare the necessary judgment to effectuate the foregoing decision by the Court.