JONES, Respondent v. AMERICAN OIL CO., Appellant

(209 N.W.2d 1)

(File No. 11150. Opinion filed July 12, 1973)

Charles H. Whiting, Whiting, Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, for defendant and appellant.

Ray J. Aldrich, Gunderson, Farrar, Aldrich, Warder, DeMersseman & Wilkins, Rapid City, for plaintiff and respondent.

WINANS, Justice.

This action was brought under the Uniform Declaratory Judgment Act, SDCL 21-24, to secure a judgment declaring the rights and duties of the parties in a lease agreement. From a judgment favorable to the plaintiff, the defendant has appealed. We affirm.

On September 30, 1952, H. Wells Jones (plaintiff) entered into the lease agreement which is the subject of this controversy with the American Oil Company (defendant). By the terms of the written agreement, the defendant oil company agreed to lease a filling station owned by the plaintiff for a term of ten years with two optional extensions of five years each. The lease was on a printed form supplied by the defendant. Section 2 of the lease, which was part of the printed form, provided in part:

> "2. Lessee agrees to pay Lessor as rental for the above described premises and said buildings, fixtures, equipment, machinery and appliances to be erected and installed by the Lessor the sum of Five Hundred Eighty-Four DOLLARS ($584.00) per month * * *."

This is followed by a blank space in which the following was typed:

"2-A Lessee agrees to pay to Lessors as *additional rental* for the above described premises a sum of money equal to 1.3¢ on each gallon of gasoline * * * delivered to said premises in excess of Three Hundred Fifty Thousand (350,000) gallons per annum". (emphasis added)

Section 8, which is part of the printed form states:

"8. Lessee shall have the option of extending this lease for a total of not more than Two (2) successive periods of Five (5) years each, *upon the same terms and conditions which were in effect during the original term. The rental to be paid by Lessee during said extension period or periods shall be the sum of Five Hundred Eighty-Four DOLLARS ($584.00) per month.* (emphasis added)

The defendant renewed the lease at the end of the original term and again at the expiration of the first renewal period. On March 6, 1970, the parties entered into an agreement modifying their previous agreement. The modification agreement provided that the plaintiff would make certain improvements to the filling station and that the rent would be increased by $451.35 per month for 120 months. The modification agreement granted defendant the option of extending the lease for three additional periods of five years each "upon the same terms and conditions which were in effect during the original term, subject to modifications herein contained." The modification agreement also stated:

"At the end of said one hundred twenty (120) month period the rental shall revert to Five Hundred Eighty-Four and no/100 Dollars (584.00) per month."

The controversy between the parties concerns the meaning and effect of the above described provisions concerning the payment of rent. The defendant paid the monthly rental as specified in the lease and the lease modification agreement. However, the defendant did not pay "gallonage" rental as set forth in section 2.A of the original lease. During the original term

of the lease, the quantity of gasoline delivered to the station did not exceed 350,000 gallons in any single year. It is undisputed, however, that in 1967 and subsequent years the gasoline delivered to the station exceeded 350,000 gallons by varying amounts and it is the plaintiff's contention that he is entitled to "gallonage" payments for those years. It is the defendant's position that the "gallonage" provision applied only to the original term of the lease and thus, under the circumstances, the plaintiff was not entitled to gallonage payments. After considering extrinsic evidence, the trial court concluded that the "gallonage" provision applied to the extended periods of the lease as well as the original term and, accordingly, that the plaintiff was entitled to gallonage payments beginning with the year 1967.

In this appeal, the defendant contends: (1) That the trial court erred in admitting extrinsic evidence to aid in the interpretation of the written instruments and (2) that the lease and modification agreements are not susceptible to the construction adopted by the trial court. Although the two contentions are somewhat interdependent, they will be considered separately.

The extrinsic evidence objected to by the defendant consisted of testimony by the plaintiff concerning the negotiations leading up to the execution of the written agreements. The defendant readily concedes that if the written provisions were unclear or ambiguous, extrinsic evidence of the circumstances surrounding execution of the written agreement may be admitted to enable the court to make a proper interpretation. See Huffman v. Shevlin, 1955, 76 S.D. 84, 72 N.W.2d 852. The defendant argues, however, that the written provisions of the lease and modification agreement relative to rent are clear and unambiguous.

■ Language in a contract may be said to be ambiguous when "it is reasonably capable of being understood in more than one sense." Newton v. Erickson, 1950, 73 S.D. 228, 41 N.W.2d 545. In suppport of his argument that the present contract is unambiguous, the defendant relies upon the provision in section 8 of the original agreement which states: "The rental to be paid by Lessee during said extension period of periods shall be the sum of

Five Hundred Eighty-Four DOLLARS ($584.00) per month." Defendant also attaches significance to a similar provision found in the modification agreement. The defendant submits that given its plain and ordinary meaning, the language he relies upon makes it clear that during the extended periods of the lease the parties intended the rental to be only the monthly figure as specified and that the provision cannot be understood in any other manner.

▮ Standing alone, the provision in section 8 is unambiguous and it would perhaps compel the construction urged by the defendant. But the provision does not stand alone. As we stated in Eberle v. McKeown, 1968, 83 S.D. 345, 159 N.W.2d 391: "A contract should be considered as a whole and all of its parts and provisions will be examined to determine the meaning of any part."

▮ In considering whether or not the parties intended the "gallonage" provision to apply to the extended periods of the lease, other provisions in the lease and modification agreement are pertinent. A provision in section 8 of the original lease states that the extended periods were to be "upon the same terms and conditions which were in effect during the original term." The same statement is made in the modification agreement. In contrast with the provisions relied upon by the defendant, these provisions can be understood as specifying that the "gallonage" provision—one of the "terms" of the original period—also applied to the extended periods. As such, the language of the contract could be understood as meaning either that rental was to be only the monthly figure during the extended periods of the lease or that the defendant was to pay as additional rental the "gallonage" payments. Therefore, the contract was ambiguous with respect to rental during the extended periods of the lease and the trial court did not err in admitting extrinsic evidence to resolve the ambiguity.

▮ In regard to the defendant's second contention, it is clear that the lease and modification agreements are susceptible to the construction adopted by the trial court. As indicated above, the language of the contract was ambiguous but it could

reasonably be understood as specifying that the "gallonage" provision applied to the extended periods of the lease. Since the contract was on a form supplied by the defendant, ambiguous language in it should be construed most strongly in favor of the plaintiff. Weisser v. Kropuenske, 1929, 55 S.D. 558, 226 N.W. 760; Evans v. Heaton, 1930, 57 S.D. 436, 233 N.W. 281. Construing the ambiguities in favor of the plaintiff would compel the construction adopted by the trial court.

Moreover, the extrinsic evidence admitted to resolve the ambiguity also favored the construction that the "gallonage" provision applied to the extended periods of the lease. Testimony by the plaintiff indicated that he was induced to enter into the lease arrangement by the prospect of receiving "gallonage" payments in addition to the basic rent and that the parties never discussed eliminating the "gallonage" payments during extended periods of the lease. Other evidence indicated that the defendant supplied monthly gallonage figures to the plaintiff during the extended periods of the lease. From this, it is reasonable to infer that the defendant felt responsible under the written agreements to make gallonage payments during the extended periods.

In light of these factors, the trial court's construction of the lease and modification agreement was proper.

Affirmed.

All the Justices concur.