CENTRAL AUTO COMPANY, Plaintiff-Respondent, v.
REICHERT, Defendant-Appellant.

Court of Appeals

*No. 77–356. Submitted on briefs October 23, 1978.—
Decided November 20, 1978.*
(Also reported in 273 N.W.2d 360.)

For the appellant the cause was submitted on the brief of *Wayne E. Rowlee* of Milwaukee.

For the respondent the cause was submitted on the brief of *Phillip J. Eckert,* and *O'Meara, O'Meara & Eckert* of West Bend.

Before Moser, P.J., Brown and Bode, JJ.

MOSER, P.J. On November 3, 1975, Jacob Reichert (Reichert) entered into an agreement with Central Auto Company (Central) whereby he would lease a store and office to be used as a bookstore. (On February 25, 1977, Central notified Reichert he was in breach of the terms of the lease and gave him thirty days in which to correct it. Reichert refused and claimed he was not in breach of the lease.)

An eviction complaint was served on Reichert on April 4, 1977. He demanded a jury trial on April 21, 1977. Prior to the trial, there was a substitution of one judge and another disqualified himself. There was also a motion for a change of venue. The court reserved its ruling on the change of venue pending voir dire. The voir dire was lengthy, necessitating a recess during which the prospective jurors discussed both the case and the extensive questioning. Reichert moved for a mistrial which was denied following completion of the voir dire. After voir dire, the court denied Reichert's motion for a change of venue.

At the close of Central's case, Reichert rested and moved for a directed verdict. The court took the motion under advisement and submitted the case to the jury. The jury found for Central; the court denied Reichert's motion for a directed verdict, and judgment was entered against Reichert on October 7, 1977. A writ of restitution was issued on October 10, 1977, but a temporary stay of the writ was granted on October 19, 1977 when the notice of appeal was filed.

The issues presented on appeal are: 1) was the defendant entitled to a change of venue, and 2) did the trial court err in refusing to grant the defendant's motion for a directed verdict.

## CHANGE OF VENUE

Reichert contends that his motion for a change of venue should have been granted because people in the Washington County area had a bias and prejudice against him and his bookstore. He cites the substitution of two judges, the striking of thirteen jurors for cause, and some of the prospective jurors' disapproval of the nature of the bookstore to support this proposition. In addition, Reichert cites the media coverage of a rock throwing incident in which the bookstore window was broken, and a pornography referendum held in April of 1977 directed primarily at Reichert's bookstore to support his claim of community prejudice.

Central claims that the court did not err because the newspaper articles were not inflammatory, several jurors were not from the West Bend community, and the referendum had been held approximately five months before this trial. It further points out that the trial court offered extensive voir dire as a means of insuring a fair and impartial jury.

Change of venue in civil cases is governed by statute.[1] The granting of a change of venue on the grounds of community prejudice is discretionary with the trial court.[2] The denial of the change of venue on the grounds of local prejudice should not be disturbed on appeal unless it appears that the trial court abused its discretion.[3]

---

[1] 801.54 **Change of venue, grounds for.** The court or the presiding judge thereof may change the place of trial in the following cases:

(1) When there is reason to believe that an impartial trial cannot be had in the designated county and when so changed it shall be to a county in which the cause complained of does not exist.

[2] *Kalb v. Luce,* 239 Wis. 256, 258, 1 N.W.2d 176, 177 (1941).

[3] *O'Keefe v. State,* 177 Wis. 64, 67, 187 N.W. 656, 657 (1922).

In determining whether the court abused its discretion, deference must be paid by the reviewing court to the trial judge's determination. However, the reviewing court is obliged to review the evidence *ab initio* to determine whether discretion was properly exercised. When there is a likelihood that the defendant will not receive a fair trial because of community prejudice, the defendant's constitutional right to a fair trial under the due process clause of the fourteenth amendment is jeopardized. The criteria for determining whether there is a likelihood that the defendant will not receive a fair trial have been set out fully in criminal cases. Since a litigant in a civil case is also entitled to a fair trial under the due process clause of the fourteenth amendment, these criteria equally apply to civil cases. Thus in both civil and criminal cases, an appellate court is obliged to consider the following factors in determining whether a change of venue should have been granted because of community prejudice:

(a) the inflammatory nature of the publicity,

(b) the degree to which the adverse publicity permeated the area from which the jury panel would be drawn,

(c) the timing and specificity of the publicity,

(d) the degree of care exercised, and the amount of difficulty encountered, in selecting the jury,

(e) the extent to which the jurors were familiar with the publicity, and

(f) the defendant's utilization of challenges, both peremptory and for cause, available to him on voir dire.[4]

After reviewing the evidence of community prejudice in light of these criteria, if there is a reasonable likelihood that the moving party will not receive a fair trial,

---

[4] *Hoppe v. State,* 74 Wis.2d 107, 110, 246 N.W.2d 122, 125 (1976).

the trial court has no discretion. The court is required to grant a change of venue.[5] Actual community prejudice need not be shown,[6] and any doubts about community prejudice should be resolved in favor of the moving party.[7]

There is nothing in the record from which we can conclude that the publicity was in any way inflammatory. Indeed, the newspaper articles were not made a part of the record, leaving only general statements and allusions to guide us. Many of the jurors were not from the city of West Bend and, therefore, had no reason to be concerned with the referendum or its publicity. All publicity concerning the referendum occurred five months prior to trial and did not involve the lease. The trial court allowed great latitude to the defendant during the voir dire to insure that the jury panel finally selected was free of any taint or prejudice. To a certain degree, the jurors were all familiar with the publicity, but those ultimately selected for this jury panel clearly established that the publicity attendant to the issues before the trial court would have no bearing on their determination. Also, the trial court accommodated more challenges for cause than were needed. Thus, based on this record, we cannot conclude that the trial court abused its discretion in denying the defendant's motion for change of venue. The record also fails to disclose a sufficient basis for us to conclude that there was a reasonable likelihood that Reichert would not receive a fair trial. Therefore, based on community prejudice, the court did not err in denying the defendant's motion for a change of venue.

Reichert's next argument concerning the failure to grant a change of venue is that members of standing

[5] *Id.; Thomas v. State,* 53 Wis.2d 483, 491, 192 N.W.2d 864, 868 (1972).

[6] *Thomas,* 53 Wis.2d at 491, 192 N.W.2d at 868.

[7] *Hoppe,* 74 Wis.2d at 110, 246 N.W.2d at 125.

and influence in the community testified against him. The Germantown Chief of Police and two Washington County deputy sheriffs testified. His assertion is that by their very presence on the witness stand, he was prejudiced. He claims that these witnesses were so influential that any citizen from the area would be biased against him. Therefore, he was entitled to a change of venue.

The influential nature of a witness' position in the community is not one of the factors appellate courts are obliged to consider in determining whether the court should have granted a change of venue. Thus, the court did not abuse its discretion in denying the change of venue.

### MOTION FOR DIRECTED VERDICT

Reichert claims that it was error for the court to refuse to construe the term "bookstore" in the lease against the drafter (Central) and refuse to grant his motion for directed verdict. The executed lease states the lessee was to operate the premises as a bookstore. The record reflects that the rented premises was used by Reichert as an adult bookstore which sold, in addition to books and magazines, a variety of novelty items with sexual connotations. Central objected to this part of the sales operation and claimed this constituted a breach of the lease agreement since it had leased the premises to Reichert as a traditional bookstore.

Reichert claims that where use of the word "bookstore" in a written lease is subject to differing interpretations, it should be construed by the court against the drafter of the lease as a matter of law.

The general rule is that ambiguous agreements must be construed most strongly against the drafter.[8] The ultimate aim of all contract interpretation is to ascertain the intent of the parties. If the intent can be determined with reasonable certainty from the face of the contract itself, there is no need to resort to extrinsic evidence. If, however, the language is ambiguous, the court is not restricted to the face of the instrument in ascertaining intent but may consider extrinsic evidence. Words and phrases in a contract are ambiguous when they are reasonably susceptible to more than one meaning.[9] In determining parties' intent, it is appropriate to consider factors happening before and after the signing of the agreement.[10] Construction of a written contract is normally a matter of law for the court, but where words or terms are to be construed by extrinsic evidence, the question is one for the trier of fact.[11]

The record established that in the negotiations leading up to the execution of the lease of the bookstore premises, Reichert agreed he would operate a traditional paperback and magazine bookstore similar to an earlier tenant of Central. After Reichert moved into the premises, the premises were operated as an adult bookstore which also sold items with sexual connotations. This is extrinsic evidence which can be employed by the trier of fact to interpret the term used in the lease. Such evidence is proper when the trier of fact must interpret what the parties intended at the time of entering a lease contract

[8] *Moran v. Shern,* 60 Wis.2d 39, 49, 208 N.W.2d 348, 352 (1973).

[9] *Patti v. Western Machine Co.,* 72 Wis.2d 348, 351–52, 241 N.W.2d 158, 160 (1976).

[10] *H. & R. Truck Leasing Corp. v. Allen,* 26 Wis.2d 158, 163, 131 N.W.2d 912, 914–15 (1965).

[11] *Pleasure Time, Inc. v. Kuss,* 78 Wis.2d 373, 379, 254 N.W.2d 463, 467 (1977).

which calls for the rented premises to be used as a bookstore. In this situation, it was proper for the court to deny a motion for directed verdict because there was an issue of fact in dispute. The trier of fact, the jury in this case, had a responsibility to hear the extrinsic evidence presented to it to determine what the parties intended the term "bookstore" to mean.

The interpretation of the term "bookstore" was an issue of fact to be determined by the jury. They could have resolved the issue of intent of Central and Reichert at the time the contract was executed. The jury was not given this factual issue to resolve. Rather, the trial court defined the word "bookstore" in its instruction to the jury. If the defendant felt that this definition in any way worked to his detriment or was erroneous, he was obliged to make a timely objection to the instruction. We note that the record does not reflect any objection by Reichert's counsel to the court's instructions to the jury. Similarly, there was no objection to the verdict question. Where the instructions are incomplete but are not erroneous as a matter of law, they will not be considered for the first time on appeal.[12] A failure to properly object to the trial court, to give the trial court an opportunity to correct any errors, meets with rebuff from an appellate court. Counsel may not accept the language of the trial court used in the verdict without objection, wait and see whether the jury answers are satisfactory, and then for the first time complain about the phraseology on appeal.[13] Even if there had been timely objection, there was no error in the verdict ques-

---

[12] *Heldt v. Nicholson Manufacturing Co.*, 72 Wis.2d 110, 116–17, 240 N.W.2d 154, 158 (1976).

[13] *Bohlman v. American Family Mut. Ins. Co.*, 61 Wis.2d 718, 724–25, 214 N.W.2d 52, 56–57 (1974); *Nimits v. Motor Transport Co.*, 253 Wis. 362, 364, 34 N.W.2d 116, 118 (1948).

tion. The form of the verdict question lies in the discretion of the trial court and will not be interfered with if the material issues of fact are covered by the question and appropriate instructions are given.[14]

After the conclusion, Reichert's brief states: "An appendix here does not seem necessary under the new Appeals Court rules since all relevant issues are included in the transcript and the record of the trial and are referenced thereto for the convenience of the Court." Section 809.19(2), Stats., requires that appellants include in their brief a short appendix to include relevant documented entries in the trial court, the findings or opinion of the trial court, and limited portions of the record essential to an understanding of the issues raised. Section 809.83 (2) discusses penalties for noncompliance with these rules and allows for an imposition of a penalty or costs on a party or counsel for failure to comply with these rules. Double costs are assessed against the appellants.

*By the Court.*—Judgment affirmed.

[14] *Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406, 425, 265 N.W.2d 513, 523 (1978).