Donald **CHORD**, Zoe Grotzke, Doris Mickelson, Wayne S. Chord, Ruth Mayer, Ilowee Owens, Iris Dau, Paul Chord, Sharron Malone, Peggy Hubbard, Casey Chord and Richard Chord, Plaintiffs and Appellees,

v.

**PACER CORPORATION, Defendant and Appellant.**

**No. 13502.**

Supreme Court of South Dakota.

Argued April 27, 1982.

Decided Nov. 17, 1982.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiffs and appellees; Joseph M. Butler of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, on brief.

Steven C. Beardsley of Lynn, Jackson, Shultz & Lebrun, Rapid City, for defendant and appellant.

WOLLMAN, Justice.

This is an appeal from a judgment rendering appellant liable for the royalty on tantalum ore removed from a mine leased by appellees to appellant. We affirm.

Appellees are the children of Roy Chord, who is now deceased. In 1970, Roy Chord and his wife, appellees' stepmother, entered into a mining lease with Robert Cullum. In 1972, the Chords and Robert Cullum formed Pacer Corporation and the terms of the 1970 lease were continued, with Mr. and Mrs. Chord leasing to Pacer Corporation. After Mr. Chord died in 1976, appellees became the royalty owners of the minerals in the Etta Mine, which is located in the Black Hills of South Dakota.

Vern Stratton, an independent miner, removed tantalum ore from the Etta dump in April and May of 1980. Testimony at trial revealed that he was given permission to mine quartz and feldspar but no other minerals. A plant manager, who knew that Stratton was removing tantalum from the Etta Mine, testified that Stratton had told him that he had permission from the general superintendent of Pacer Corporation to mine tantalum. Robert Cullum, the president of Pacer Corporation, became aware of Stratton's activities in early May. At that time Robert Cullum commented to Stratton that it would be interesting to see how much tantalum he would recover from the dump. Approximately one week later he told Stratton to stop his activities and remove himself from Pacer property. Robert Cullum testified at trial that the delay in ordering Stratton off the property was due to his reluctance to confront Stratton in front of a Pacer customer, his desire to inquire whether the general superintendent had given Stratton permission to mine tantalum, and his desire to ascertain the amount of tantalum ore removed from the Etta dump.

Appellees brought this action against Pacer Corporation. The only issue not settled out of court by the parties is whether appellant owes appellees a royalty on the tantalum Stratton removed from the Etta Mine.

Appellant, at the time it appealed this case, was in litigation against Stratton to recover damages for the removal of the tantalum ore. Appellant contends that it is obligated to pay a royalty to appellees only if and when appellant receives any proceeds from the tantalum ore from Stratton. Appellant relies on the following provision of the lease to support its contention:

CONSIDERATION: As consideration for this Lease, the Lessors reserve unto themselves and the Lessee promises and agrees to pay a royalty upon minerals mined, produced or sold from the properties herein concerned as follows:

. . . . .

2. Beryl and Tantalum: 50% upon all such minerals recovered from the dump presently existing on the property; 15% of such minerals mined from the concerned property; such percentage shall be computed upon the gross proceeds *received by the Lessee from and upon the sale of any of such minerals.* (emphasis added).

In determining the intent of the parties to a contract, we must consider the entire contract. *Kohlman v. Cahill,* 301 N.W.2d 664 (S.D.1981); *City of Sioux Falls v. Henry Carlson Co., Inc.,* 258 N.W.2d 676 (S.D.1977). Another relevant provision of the lease provides:

OPERATING PRACTICES: In all operations conducted upon the property, the Lessee shall conform to and abide by all federal, state and local laws, rules and regulations applicable thereto and shall conduct its operations in a good and workmanlike manner and in accordance with practices generally accepted in the mining industry as workmanlike practices.

The Fifth Circuit Court of Appeals, in interpreting Texas law, stated that a mineral lessee has "a general duty to make reasonable use of the premises in accordance with the provisions and general purpose of the lease and to exercise reasonable care in his use, having due regard to the rights of the [lessor]." *Lynn v. Maag*, 220 F.2d 703, 705 (5th Cir.1955). Granted that the *Maag* case involved a question regarding the physical use of the leased premises, we believe that the general principle stated therein is applicable to the facts of the case before us, and that adherence to the *Maag* requirements would constitute conducting a mining operation in a "good and workmanlike manner" as is required by the lease.

The trial court stated in its findings of fact and conclusions of law that appellant had knowingly permitted Stratton to remove tantalum ore from the Etta dump without any royalty arrangement and without supervision of the amount of tantalum being removed and by doing so appellant had breached the provision of the lease dealing with operating practices. We cannot say that the evidence is insufficient to sustain the trial court's conclusion that the mine was not operated in a good and workmanlike manner. We conclude that adherence to the "good and workmanlike manner" provision of the lease required appellant to prevent Stratton from jeopardizing appellees' royalty interest.

■ If possible, a court must ascertain and give effect to the mutual intent of the parties to a contract. *Kohlman*, supra; *Johnson v. Johnson*, 291 N.W.2d 776 (S.D. 1980). We cannot conclude that the parties to the lease intended that the lessee could allow unauthorized removals of minerals and owe the lessor royalties only if and when the lessee recovered the proceeds of such unauthorized removals. Such a practice is inconsistent with the regard due the rights of the lessor, *Lynn v. Maag*, supra, and is in violation of the operating practices provision of the lease.

■ The trial court found that Stratton had received $43,949.47 for tantalum sold from the Etta dump. We cannot say that this finding is clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). Since appellant's failure to prevent the unauthorized removal of tantalum ore caused appellees a loss of a fifty percent royalty, the trial court correctly calculated the damages as $21,974.73, plus interest. See SDCL 21–2–1.

The judgment is affirmed.

All the Justices concur.