In the Matter of the ESTATE OF
George OLSON, aka George M.
Olson, Deceased.

No. 13580.

Supreme Court of South Dakota.

Considered on Briefs Oct. 15, 1982.

Decided April 27, 1983.

Brent A. Wilbur of May, Adam, Gerdes & Thompson, Pierre, for appellants Beneficiaries Olsons.

Wally Eklund of Johnson, Eklund & Davis, Gregory, for appellees Kaltsulas and Nachtigall.

WOLLMAN, Justice.

This is an appeal from an order construing the will of George Olson, deceased, and directing the co-executors to seek a recoupment of excess distributions paid to certain beneficiaries. We affirm.

Article Eleven of the will makes specific bequests in the amount of $15,000.00 to each of the decedent's seven nephews, Wilbur, Delwyn, Glen, Robert, Duane, Gene, and Vernon Olson.

Article Twelve of the will devises certain real property to nephews, Duane, Wilbur, and Robert Olson, subject to a lien in favor of the estate in the amount of $400,000.00. This article also sets forth terms and conditions under which the devisees are entitled to receive the real property.

Article Thirteen of the will provides:

I give, devise and bequeath all the rest, residue and remainder of my property, be it real, personal or mixed, of every kind and character, whether now owned or hereafter acquired, and wheresoever situated, together with the proceeds from Article Twelve above, to the following named persons in the amounts indicated:

. . .

Listed as beneficiaries under this provision are the seven nephews named above, together with five of decedent's nieces, each of the beneficiaries being given a one-twelfth share.

Article Fourteen of the will provides:

I direct that the bequest given to any beneficiary under this Will in Article Eleven and Article Thirteen shall be diminished to the extent that said beneficiary receives funds from a Savings Certificate or Certificate of Deposit which I held jointly with said beneficiary at the date of my death. The additional funds available for distribution to other beneficiaries by virtue of the operation of the provisions of this Article shall be divided equally among the other beneficiaries in Article Thirteen.

At the time of his death, George Olson owned jointly held certificates of deposit totaling $189,131.90 with the seven nephews named in Article Eleven. These certificates ranged in amount from $48,265.52 with Delwyn Olson to $10,353.60 with Vernon Olson.

Duane, Wilbur, and Robert Olson were named in the will as co-executors. On April 17, 1980, a partial distribution was made from the estate to the beneficiaries named in Articles One through Five and Eight through Ten of the will. On May 15, 1980, the co-executors filed an intermediate accounting and a second petition for partial distribution, asking that a partial distribution be made to the beneficiaries named in Articles Eleven and Twelve of the will. Following a hearing on the petition, the circuit court entered an order authorizing the co-executors to pay the $15,000.00 bequests to each of the persons named in Article Eleven of the will.

On May 4, 1981, the co-executors filed a second intermediate accounting and a petition for a construction of Article Fourteen of the will. Following a hearing on the petition, the court entered the order appealed from, which determined that the beneficiaries named in Article Eleven are entitled to receive the $15,000.00 bequests set forth therein in addition to the shares that they are entitled to under Article Thirteen, subject to having the amounts received by way of jointly held certificates of deposit or savings accounts with decedent at the time of his death charged against the share which the beneficiaries would otherwise receive under the provisions of Articles Eleven and Thirteen. Further, the order directed the co-executors to seek recoupment from the seven nephews named in Article Eleven of the excess distributions paid under the second partial distribution in the total amount of $96,499.11, ranging in individual amounts from $15,000.00 from Delwyn, Glen, Wilbur, and Duane Olson, down to $10,353.60 from Vernon Olson. The trial court determined that the excess distributions should have been applied to the payment of the federal estate tax obligation, which was drawing interest at the rate of 12% per year, and therefore ordered that the excess distributions draw interest

at the rate of 12% from October 10, 1980, until repaid to the estate. With the exception of Vernon Olson, the nephews named in Article Eleven have appealed from the order. The appellees are four of the nieces named in Article Thirteen, together with Vernon Olson.

■ Appellant's first contention is that the trial court should have ruled that Article Fourteen created an ambiguity in that its provisions render vague the otherwise clear provisions of Articles Eleven and Thirteen. Thus, appellants contend, the trial court should have granted their request to introduce evidence bearing on the testator's true intent.

Although SDCL 29-5-8 permits the introduction of extrinsic evidence in certain cases,* we have held that "[e]xtrinsic evidence as to the intention of the testator, whether circumstantial or otherwise, is admissible only when there is ambiguity or uncertainty upon the face of the will." *In re Hurley's Estate,* 61 S.D. 233, 237, 248 N.W. 194, 195 (1933).

SDCL 29-5-5 provides, "All the parts of a will are to be so construed in relation to each other, as, if possible, to form one consistent whole but where several parts are absolutely irreconcilable, the latter must prevail." Applying this statute, the trial court concluded in its memorandum opinion:

> In viewing the will as a whole, the court determines that the testator favored those persons named in Article Eleven by $15,000 each over the additional persons named in Article Thirteen in the distribution of his estate. Article Fourteen is not ambiguous. Any person named in Articles Eleven and Thirteen receiving a part of the decedent's monies by way of jointly held certificates of deposit or savings accounts at the time of decedent's death would have that amount charged against what he or she would

otherwise receive under the provisions of Articles Eleven and Thirteen.

The court thereafter outlined the method by which the amount of the overpayments to the appellants were to be computed.

■ We agree with the trial court's analysis and reject appellants' contention that there is any ambiguity in the will. "Language is ambiguous when it is reasonably capable of being understood in more than one sense." *Newton v. Erickson,* 73 S.D. 228, 236, 41 N.W.2d 545, 549 (1950). *See also City of Sioux Falls v. Henry Carlson Co.,* 258 N.W.2d 676 (S.D.1977); *Ponderosa-Nevada, Inc. v. Venners,* 90 S.D. 579, 243 N.W.2d 801 (1976); *Jones v. American Oil Co.,* 87 S.D. 384, 209 N.W.2d 1 (1973).

Granted that some computation is necessary in order to determine the shares that appellants are ultimately entitled to from the estate, and those computations are not in issue here, we conclude that the provisions of Article Fourteen are far more straightforward and direct than were the provisions held to be unambiguous in *In re Hurley's Estate, supra.*

■ Appellants next contend that Article Fourteen is void and should be given no effect because it attempts to incorporate by reference documents that were not in existence at the time the will was executed, this in violation of the doctrine of incorporation by reference, which permits extrinsic writings to be incorporated in a testamentary instrument only if they are in existence at the time the will is executed. *In re Protheroe's Estate,* 77 S.D. 72, 85 N.W.2d 505 (1957). We do not view Article Fourteen as incorporating any specific documents, however. Rather, it merely establishes a formula by which certain beneficiaries might have their testamentary shares adjusted by reason of testator's extra-testamentary largess. No reference to pre-testamentary documents need be made to determine testator's testamentary intent; thus the doc-

---

* SDCL 29-5-8 provides:

  When applying a will it is found that there is an imperfect description, or that no person or property exactly answers the description, mistakes and omissions must be corrected if the error appears from the context of the will, or from extrinsic evidence; but evidence of the declarations of the testator as to his intention cannot be received.

trine of incorporation by reference is inapposite.

 Appellants next contend that having acquiesced in the partial distribution made pursuant to the trial court's order of June 5, 1980, appellees are estopped from now claiming a different construction of the will than that which inhered in the June 1980 order. Appellants argue that because appellees failed to resist the partial distribution, as they were authorized to do by SDCL 30–23–7, they should be held to be bound by the decree of partial distribution. Although it is true that in *Hofer v. Hamre,* 90 S.D. 140, 238 N.W.2d 496 (1976), we held that an executrix who had signed a petition asking for the appointment of an administrator with the will annexed was estopped from denying the validity of the order issued in response to the petition, that case is inapposite inasmuch as appellees did not actively join in the petition for the second partial distribution.

 Finally, appellants contend that the trial court erred in requiring appellants to pay interest on the excess distributions until repaid to the estate.

At the time the order appealed from was entered, SDCL 54–3–4 provided, "Under an obligation to pay interest, no rate being specified, interest is payable from date of incurrence of debt, unless the parties have otherwise agreed, at the rate of twelve percent per annum . . . ."

 Neither appellants nor appellees have cited any case law bearing on a trial court's authority to require the payment of interest by a beneficiary on excess distributions that are later recouped by an estate. We note, however, that it has been held that "[t]here should be no fair doubt that, as between a personal representative and a distributee who is overpaid, simple interest is chargeable against the distributee." *Searles' Adm'r v. Gordon's Adm'r,* 156 Va. 289, 157 S.E. 759, 762 (1931). Likewise, "Interest may be charged against the one receiving the wrongful payment or distribution, or, where the claim is made by another distributee, he may be entitled to interest

on the amount of the deficiency of his share during the period of postponement from the time of the original distribution." 34 C.J.S. *Executors and Administrators* § 505 (1942) (footnotes omitted). Accordingly, we hold that the trial court did not exceed its authority in requiring appellants to pay interest at the rate of 12% on the amounts of the excessive distributions that were made to them under the second partial distribution.

The order appealed from is affirmed.

All the Justices concur.

