KENNETH G. DEBOER ET AL., APPELLANTS, V. OAKBROOK HOME
ASSOCIATION, INC., APPELLEE.

359 N.W.2d 768

Filed December 21, 1984.    No. 83-705.

John B. Ashford of Dowd, Fahey & Ashford, for appellants.

James E. Schaefer, for appellee.

KRIVOSHA, C.J., HASTINGS, CAPORALE, and SHANAHAN, JJ.,
and BRODKEY, J., Retired.

KRIVOSHA, C.J.

This appeal presents the question of whether a vendor of real
estate may impose additional covenants upon land after it has
been sold under a purchase contract and while the deed is held
in escrow pending final payment. The district court found that
the vendor, Oakbrook, Inc., could impose such covenants and
rendered a judgment in favor of the appellee, Oakbrook Home
Association, Inc. We believe, however, that the district court
was in error, and for that reason we reverse and remand.

The evidence in this case is virtually without dispute. It
appears that in September of 1976 the appellants, Kenneth G.
DeBoer and Canda L. DeBoer, husband and wife, entered into

a purchase agreement with Oakbrook, Inc., for the purchase of real estate legally described as Lot 3, Raven Oaks Replat No. 2, a subdivision, located in Douglas County, Nebraska. The land contract provided that the sale price was to be $9,000, of which $4,000 was acknowledged to have been paid at the time of the execution of the contract, with the balance due in September of 1977. The contract further provided that upon payment of the balance the vendor would convey to the vendees good and marketable title "free and clear of all encumberances [sic] including the mortgage to Commercial Federal Savings and Loan Association of Omaha, Nebraska." The evidence further discloses that on September 30, 1976, the vendor, Oakbrook, Inc., executed a warranty deed to the land in favor of the DeBoers and placed the deed in escrow, subject to final payment by the DeBoers. The warranty deed recited that it conveyed the property free and clear of any encumbrances.

The evidence further establishes that at the time the purchase agreement was executed, Oakbrook, Inc., had filed in the office of the register of deeds of Douglas County, Nebraska, certain covenants covering a portion of Raven Oaks subdivision, but not covering the property covered by the purchase agreement entered into with the DeBoers. In particular, article IV of the covenants provided that the lot owners, defined as owners of the lots included within the legal description set out in the document, agreed to become members of an association and to pay to the association assessments for such purposes and in such amounts as it determined. Both parties concede that at the time the DeBoers entered into the contract with Oakbrook, Inc., the covenants did not cover the property being purchased by the DeBoers and did not obligate the DeBoers to belong to the association or make payment. Oakbrook, however, maintains that the DeBoers were advised that there were covenants covering other property in the subdivision and that in all likelihood the covenants would be amended sometime in the future to include the property being purchased by the DeBoers. Neither the time when the amendment would be executed nor the nature and extent of the covenant was explained. The evidence further discloses that on May 11, 1977, the covenants were in fact amended to include

the property being purchased by the DeBoers. On June 2, 1977, the amendments were recorded in the office of the register of deeds. On September 30, 1977, the DeBoers made the final payment, as required by their contract, and received possession of the deed previously executed on September 30, 1976, and placed in escrow.

The evidence further discloses that for several years after making final payment the DeBoers did in fact participate in association affairs and made payment in the amount of $37 per quarter. It was not until the assessment was raised to $120 per quarter that the DeBoers objected.

The DeBoers then filed suit seeking a judgment declaring that they were under no obligation to belong to the association or make payment thereto and, further, for an order removing any cloud on their title created by the assessments or the amended covenants. The association answered and filed a counterclaim seeking to recover the unpaid assessments. After trial the district court concluded that the property owned by the DeBoers was subject to the covenants and entered judgment accordingly for the homeowners association.

It was apparently the theory of the homeowners association that until the deed was actually delivered to the DeBoers, additional covenants and restrictions could be placed upon the property without the assent of the DeBoers; and, further, that by reason of the fact that the DeBoers had made payment to the association, they were estopped to deny that they were bound by the covenants. We believe that neither theory is applicable in this case.

Appellee has cited to us authority to the effect that where a deed is placed in escrow subject to a condition, delivery does not occur until after the fulfillment of the condition. See, *Soward v. Moss*, 59 Neb. 71, 80 N.W. 268 (1899); *Mason v. Strickland*, 73 Neb. 783, 103 N.W. 458 (1905). Those cases are not relevant to the instant appeal. The question is not whether the deed has been delivered to the vendees so as to permit them to deal with the land but, rather, whether the vendor has lost control over the deed so as to be precluded from exercising dominion or control over the land except as may be necessary to protect its security interest.

It is clear that on September 11, 1976, when the DeBoers entered into the contract to purchase the land in question, they acquired equitable title to the property, the legal title remaining in the seller only as security for payment. In the case of *Buford v. Dahlke*, 158 Neb. 39, 42-43, 62 N.W.2d 252, 254-55 (1954), we said:

> It has been frequently and consistently decided by this court, as it is quite unanimously agreed by courts generally, that if the owner of real estate enters into a contract of sale whereby the purchaser agrees to buy and the owner agrees to sell it and the vendor retains the legal title until the purchase money or some part of it is paid, the ownership of the real estate as such passes to and vests in the purchaser, and that from the date of the contract the vendor holds the legal title as security for a debt as trustee for the purchaser.

Further, in *Buford, supra* at 43, 62 N.W.2d at 255, we said:

> "An executory contract for the sale of land vests the equitable ownership of the property in the purchaser, and in such case the seller retains the legal title as security for the deferred installments of the purchase price." . . . "A vendee in possession of land under a contract of purchase, on which part of the purchase price has been paid, holds equitable title to the land . . . ."

Furthermore, in *Beren Corp. v. Spader*, 198 Neb. 677, 689, 255 N.W.2d 247, 254 (1977), we said:

> [U]pon the execution of a contract for the sale of real estate, the equitable ownership of the property vests in the vendee, even though the seller retains the legal title as security for deferred installment payments of the purchase price. . . . Under a land contract, the vendee is the equitable owner of the real estate. Graf v. State, 118 Neb. 485, 225 N.W. 466 (1929).

The question, therefore, which must be addressed by this court is whether land in which the equitable title has passed to the vendee, the legal title being retained by the vendor merely as security for payment, can be further encumbered by the vendor without the consent or approval of the vendee when, as here, the deed to the property has been placed in escrow.

We believe the vendor may not so impose such restrictions, particularly where, as here, the vendor agrees to convey the property "free and clear of encumbrances." To hold otherwise would be to give to the vendor the unilateral right to "change the rules" after the fact and without the vendee's assent. It would be a strange contract which would permit such action. By entering into a purchase agreement and placing the deed in escrow, the vendor loses the right to control the property or any incidents of ownership except those which are necessary to protect its security rights.

We had occasion in *Beren Corp. v. Spader, supra* at 689-90, 255 N.W.2d at 255, to consider the effect of placing the deed in escrow, saying that

> where a land contract has an escrow provision providing that the deed will be held in escrow until payment of the purchase price, the grantor of an instrument held in escrow loses control over it so long as the grantee does not default, even though he retains bare legal title in the land as security for the payment of the purchase price.

Furthermore, in *Valentine Oil Co. v. Powers*, 157 Neb. 71, 82, 59 N.W.2d 150, 158 (1953), we said: " 'The grantor or depositor loses control over the instrument placed in escrow, although he retains legal title and its concomitants until performance of the condition . . . .' " Oakbrook, in this case, merely held legal title as security and had no control over the land while the deed was in escrow and the vendee was not in default. Having no control, therefore, the vendor was precluded from imposing new and additional covenants upon the land.

Appellee further argues, as we have noted, that in any event the DeBoers are estopped from denying the covenant by reason of the fact that they had some knowledge that additional covenants of some nature might be subsequently imposed upon the property, and for the further reason that they voluntarily made payment. In effect, appellee relies upon the doctrine of equitable estoppel. We do not believe that equitable estoppel applies in this case. The fact that one may know that an effort may be made to impose obligations on property which has already passed beyond the control of the vendor does not estop

the vendee from refusing to comply with those requirements. Moreover, one may not attempt to impose equitable estoppel unless there has been a change of position in reliance on the actions of the vendee. In *Reed v. Williamson*, 164 Neb. 99, 117, 82 N.W.2d 18, 28 (1957), we noted:

> "Equitable estoppels operate as effectually as technical estoppels. They cannot in the nature of things be subjected to fixed and settled rules of universal application, like legal estoppels, nor hampered by the narrow confines of a technical formula. * * * The following, however, may be ventured as the sum of all cases: That a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith, relied thereon. Such an estoppel is founded on morality and justice, and especially concerns conscience and equity." . . .
>
> . . . "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, or contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of contract, or of remedy."

Appellee cites us to *Hogue v. Dreeszen*, 161 Neb. 268, 73 N.W.2d 159 (1955), in support of its position. While a simple reading of syllabus No. 3 might lead one to believe the case applicable to the case at bar, a reading of the case discloses it has no relevant application. In *Hogue* the land in question was admittedly subject to the covenant, although the purchaser had no actual knowledge thereof. Additionally, the surrounding landowners acted in reliance on the covenant. As we have noted, none of these facts are true in the case at bar.

In the instant case, not only was the land not subject to the covenant but, additionally, there is no showing that the association or any of its members, in any manner, relied upon

anything that the DeBoers did or that they changed position in any way. Had the DeBoers at the outset refused to make the $37-per-quarter payment, there is no indication that the association would not have come into being or would have abandoned all of the other members of the association who in fact were bound to make payment. There is simply no basis upon which the association can maintain there is any equitable estoppel.

The judgment of the trial court, therefore, must be reversed and remanded with directions to enter a judgment finding that the property purchased by the DeBoers and legally described as Lot 3, Raven Oaks Replat No. 2, a subdivision, surveyed, platted, and recorded in Douglas County, Nebraska, is not subject to the terms and conditions of certain covenants recorded by Oakbrook, Inc., either as originally recorded in 1974 or as subsequently amended in 1977.

REVERSED AND REMANDED WITH DIRECTIONS.