Harvey BUHL, G.R. Anderson, and Thomas M. Maher, individually and doing business as BAM, a partnership, Plaintiffs and Appellees,

v.

Robert BAK, Doing Business as Bak Construction, Defendant,

and

John Bothwell, Defendant and Appellant.

No. 15113.

Supreme Court of South Dakota.

Considered on Briefs Sept. 18, 1986.

Decided Feb. 18, 1987.

Rehearing Denied March 30, 1987.

Patricia A. Meyers of May, Adam, Gerdes & Thompson, Pierre, for defendant and appellant Bothwell.

Charles Poches, Jr. of Poches & Lee, Fort Pierre, for plaintiffs and appellees.

FOSHEIM, Retired Justice.

A partnership known as BAM (plaintiffs) brought this action for a declaratory judgment to determine their ownership rights to minerals, gravel, and sand on a twenty-acre piece of property in Hughes County known as Outlot H–3. Plaintiffs also sought injunctive relief to prevent the defendants from removing any sand, gravel or minerals from the property. After a trial to the court, the court declared that plaintiffs were the owners of all minerals, sand, and gravel located on the property and enjoined defendants from removing any of these materials. The court declared that defendant Bothwell had no legal title to the property but only had a possessory interest for the sole purpose of pasturage. Bothwell appeals.* We affirm.

### FACTS

In 1979 James and Betty Hunt executed a contract for deed to convey a 400 acre tract of land to Bobby Jones. This contract reserved Hunts' right to remove sand and gravel from the property for a period of three years. In 1981 Jones assigned his interest in this property to plaintiffs. The assignment from Jones to plaintiffs contained the following recitation regarding twenty acres of the tract:

It is further agreed Buyers [plaintiffs] will deed, on April 1, 1989, twenty (20) acres to John Bothwell. Said twenty (20) acres shall be directly behind Bothwell's existing 2.9 acre homesite, described as follows: Outlot H–1, in the SW ¼ of Section 17, Township 110 North, Range 77 West of the Fifth Principal Meridian, Hughes County, South Dakota.

It is agreed such twenty (20) acres shall not include the existing house, barn, corrals, or highway frontage to a depth of five hundred feet (500'). Bothwell shall, at his expense, prepare a survey of said twenty (20) acres, pay all closing costs, including title insurance if

---

* A separate jury trial was held on the issue of plaintiffs' damages resulting from defendants' wrongful removal of sand and gravel from the property. Although the judgment entered by the trial court in this appeal does not include the determination and direction required for the judgment to be a final appealable judgment under SDCL 15–6–54(b), a final judgment on the remaining issue of damages has been entered.

desired. If such survey is not prepared prior to June 1, 1981, Buyers shall have no obligation to transfer any property to John Bothwell. This right shall be a personal right to John Bothwell and shall not in any manner run to the benefit of any other person, mortgage holder, or any transferee by any means.

These two paragraphs are the only reference to any interest in the property created in Bothwell's favor. No other documents refer to any alleged interest of Bothwell's in the property that was transferred between the Hunts, Jones, and plaintiffs.

The twenty-acre tract to be deeded to Bothwell was later described as Outlot H–3 in a plat prepared by Bothwell.

Bothwell desired to purchase some of the property for grazing livestock because the property was located near his home. Because he lacked any financing to buy the entire tract, plaintiffs were located as purchasers of the larger tract, less the twenty acres Bothwell desired. Although Bothwell was present during some of the negotiations between Jones and plaintiffs, and managed to have Jones mention the twenty acres in the assignment to plaintiffs, there was no evidence that any of the parties discussed the subject of mineral rights at that time. Bothwell paid no consideration to anyone, nor was he a party to the assignment to plaintiffs or to any document executed by Jones.

In 1983 plaintiffs placed a deed to Bothwell in escrow to be delivered in 1989. The deed was for twenty acres described as Outlot H–3 and reserved all of the mineral interests in plaintiffs.

Bothwell pastured livestock on the twenty acres pursuant to an oral lease with plaintiffs. Although plaintiffs and Bothwell discussed the mineral interests in the twenty acres, no other agreements, written or oral, were ever reached between Bothwell or any of the other parties.

Sometime in 1982 Bothwell fenced Outlot H–3. That same year he and defendant Bak signed a lease agreement purportedly giving Bak the right to mine gravel on Outlot H–3. Bak mined and removed some material from the property.

ISSUE

Appellant Bothwell's brief states the issue as: "Did Bothwell become the owner of the twenty acres known as Outlot H–3 when Bobby L. Jones assigned his interest in an executory real estate contract to [plaintiffs]?" As we read the brief, we have more accurately determined the issue to be whether the intent of the parties in making the assignment from Jones to plaintiffs was to make Bothwell the present owner of Outlot H–3, including the mineral interests.

■ Bothwell's statement of the issue and a portion of his brief appears to argue that the assignment from Jones to plaintiffs entitled Bothwell to present ownership of Outlot H–3, including the mineral rights. The trial court's conclusions of law and its judgment also contain recitations concerning Bothwell's right to title in 1989, including the mineral rights. But a final determination of the issue of Bothwell's right to full ownership of the lot may not be ripe for adjudication because many contingencies exist before Bothwell can gain title. The issue of Bothwell's right to title in the future was not clearly framed by the pleadings, nor was it tried by implied consent. *See* SDCL 15–6–15(b); *Western Petroleum Co. v. First Bank Aberdeen,* 367 N.W.2d 773 (S.D.1985). Because we are reluctant to determine an issue that was not fully presented to and considered by the trial court, we issue this caution about our decision and make it clear that we have only decided Bothwell's present interest to the minerals and not the nature of the interest he may be entitled to in 1989 when all of the contingencies have been removed.

■ To determine the rights to the minerals we must examine the intent of the parties to the assignment, which in this case is a contract. In construing contracts courts are to ascertain and give effect to the parties' mutual intentions, which are to be derived from the entire contract. *See, e.g., S & S Trucking v. Whitewood Motors*

*Inc.*, 346 N.W.2d 297 (S.D.1984); *Chord v. Pacer Corp.*, 326 N.W.2d 224 (S.D.1982). Bothwell argues that the intent of plaintiffs and Jones was that Bothwell was to receive equitable title to the twenty acres known as Outlot H–3, including the mineral rights. Bothwell further argues that the assignment to plaintiffs is ambiguous and is to be construed most strongly against plaintiffs, who had the document drafted. *See, e.g., Northwestern Engineering Co. v. Thunderbolt Enterprises*, 301 N.W.2d 421 (S.D.1981); *City of Sioux Falls v. Henry Carlson Co.*, 258 N.W.2d 676 (S.D.1977).

The trial court made several findings and conclusions regarding Bothwell's rights arising from the assignment. The court found that Bothwell was not a party to any of the instruments between Jones, Hunts or plaintiffs and that he had paid no consideration to anyone. The court further found there was no explanation as to any agreement between Jones and Bothwell, and that Bothwell had no written or oral authority from plaintiffs to remove materials from the property. The court concluded that Bothwell had possession of the property at the sufferance of Jones solely for the purpose of pasturage and that Bothwell's legal title would not ripen into a perfected legal title until 1989.

■■■ Bothwell failed to propose or object to any of the trial court's findings, and he does not attack any of the findings as clearly erroneous. The trial court's findings support its conclusions that Bothwell did not have possession of any gravel or mineral rights, and that he had possession of the property only for pasturage of his livestock. Any question of the nature of Bothwell's interest that was intended to be created by the contract between the parties is a question for the fact finder, in this case the court. *See North River Ins. Co. v. Golden Rule Constr. Inc.*, 296 N.W.2d 910 (S.D.1980). The trial court's findings on these factual issues are not clearly erroneous. *See S & S Trucking, supra; Burke v. Bubbers*, 342 N.W.2d 18 (S.D.1984) (action for reformation of instrument to conform to parties' intent).

■■ Any question of law of whether any agreements were ambiguous, as Bothwell argues, must also be resolved in plaintiffs' favor. The question of whether a contract is ambiguous is a question of law for the court. *North River Ins. Co., supra.* Although Bothwell did not propose any conclusions on the question of an ambiguity, the written and oral agreements between Jones, plaintiffs, and Bothwell clearly gave Bothwell no present interest in the minerals. Because the assignment is not reasonably capable of being understood in any sense as a grant to Bothwell of a present possessory right to the minerals, it is not ambiguous. *See Jones v. American Oil Co.*, 87 S.D. 384, 209 N.W.2d 1 (1973); *North River Ins. Co., supra; Estate of Olson*, 332 N.W.2d 711 (S.D.1983). Because the assignment is not ambiguous about Bothwell's present interest in the minerals, we have no need to resort to the rule to be applied when an ambiguous contract exists. *See, e.g., City of Sioux Falls, supra*, at 679 (ambiguous contract to be interpreted most strongly against the one who drafted the contract and caused the uncertainty to exist).

The judgment of the trial court is affirmed.

WUEST, C.J., and MORGAN and HENDERSON, JJ., concur.

SABERS, J., dissents.

MILLER, J., not having been a member of the court at the time this action was submitted to the court, did not participate.

SABERS, Justice (dissenting).

I dissent. Bothwell was to receive twenty acres behind his home subject to a condition precedent, (i.e., having it platted and surveyed prior to June 1, 1981). Bothwell satisfied this condition, and at that moment, he became the equitable owner of those twenty acres. Bothwell was to receive legal title to Outlot H–3 in 1989 when legal title was conveyed from Hunt to BAM and Bothwell.

Because Jones was not entitled to a deed to the real estate until April 1, 1989, he could not pass legal title to BAM and Bothwell until then. However, Jones did assign his equitable ownership to BAM and Bothwell. "The equitable estate of the vendee is alienable, descendable and divisible in like manner as real estate held by legal title." *Lewis v. Hawkins,* 90 U.S. 119, (23 Wall. 437), 23 L.Ed. 113 (1875); *Lebrecht v. Beckett,* 96 Ariz. 389, 396 P.2d 13, 15–16 (1964). One who buys from the vendee and assumes payment of the purchase money stipulated to be paid takes the property subject to the same liabilities, legal and equitable, to which it was subject in the hands of the vendee. *Lewis, supra.* The Hunts and Jones were the grantors and assignor respectively, and nowhere did any one of them reserve the mineral rights in themselves.

A simple review of the facts in question establishes that Bothwell is the equitable owner to the twenty acres in question even though he is not yet the legal owner. Because he was promised the deed to the twenty acres without any reservation whatsoever as to any mineral rights, he is the equitable owner of the twenty acres now without any reservation for mineral rights. "[T]he equitable estate, in its entirety, passes immediately to the vendee at the moment the contract goes into effect, and the bare legal title for security purposes remains in the vendor." *Petition of S.R.A.,* 219 Minn. 493, 18 N.W.2d 442, 449 (1945). *See also: Farmers State Bank v. Slaubaugh,* 366 N.W.2d 804, 807 (N.D. 1985); *DeBoer v. Oakbrook Home Ass'n, Inc.,* 218 Neb. 813, 359 N.W.2d 768, 771 (1984); *First Federal Sav. & Loan Ass'n v. Wick,* 322 N.W.2d 860, 862 (S.D.1982) (Vendee acquires equitable title, not merely equitable interest, in an executory contract for sale of land); *Foreclosure of Tax Liens, Etc. v. Young,* 106 Wis.2d 244, 316 N.W.2d 362, 365 (1982). Therefore, it was error for the trial court to award the mineral rights to BAM.

On April 20, 1979, James H. and Betty M. Hunt entered into an executory real estate contract with Bobby L. Jones for the sale of approximately 387.28 acres. In this contract, the Hunts reserved the right to mine minerals and gravel from the above described property for a period of three years after the signing of the agreement but made no reservation of any other rights to the mineral, sand, or gravel.

On January 15, 1981, seller Bobby Jones and buyer Harvey Buhl entered into a real estate purchase agreement entitled "Deposit Receipt and Agreement" (Exhibit 14). This is a legally enforceable document and provides, "Harvey Buhl will deed John Bothwell twenty acres at the end of this contract directly behind his house or three acres." In respect to this exhibit, the realtor, Mr. Bourk, was asked what he said to Harvey Buhl that day; he testified: "I just asked him if he would be interested in buying the land if there was twenty acres removed from it for Bothwell and he said he would." There was no discussion whatsoever concerning any reservation of mineral rights on those twenty acres at that time, nor was there at the time of the signing of Exhibit 14.

On January 27, 1981, pursuant to this real estate purchase agreement, Jones assigned his interest in the property (except for twenty acres) and the real estate contract to Tom Maher, Harvey Buhl, and Rick Anderson doing business as BAM. Despite the fact that this "assignment" was prepared by one of the partners, attorney Tom Maher, no reservation of mineral rights was contained therein.

Jones' intention is paramount in this entire matter. He testified as follows:

*Question:* What is it that you sold to Mr. Maher, Mr. Buhl and Mr. Anderson under the assignment?

*Answer:* Everything that I had bought from Jim Hunt except twenty acres.

*Question:* Okay. And who was supposed to get the twenty acres?

*Answer:* Johnny Bothwell.

*Question:* Did you put any restriction on the twenty acres to John Bothwell?

*Answer:* No.

*Question:* Did you want to keep the mineral rights on any of that property in yourself?

*Answer:* No. I didn't keep anything.

*Question:* And did you intend John to have whatever it was that you had in those twenty acres?

*Answer:* Yes.

This last question was objected to on the basis that it was attempting to impeach a written document. The court sustained the objection if in fact it went to impeach the document. However, it does not impeach the document because no reservation of mineral rights was reserved in the assignment of the contract.

Bothwell platted the twenty acres as Outlot H–3. On January 25, 1983, BAM entered into an agreement with the State of South Dakota Department of Transportation. This agreement allowed the State to take gravel, sand, and rock from the entire real property *except* from Outlot H–3. Only after the land was platted, fenced and possessed by John Bothwell, did attorney Maher prepare a deed, have it signed by the BAM partners and place it in escrow. This was on August 22, 1983. For the first time, BAM, as the sellers "expressly retained all gravel, sand, oil and gas or any other mineral rights, the full right of ingress and egress to obtain and process same without cost and all rights useful to the removal of any of the above rights as to said Outlot H–3 (the twenty acres)." This was too little, too late, and too self-serving.

"The primary rule in construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties." *S & S Trucking v. Whitewood Motors, Inc.*, 346 N.W.2d 297, 299 (S.D.1984) *citing GMS, Inc. v. Deadwood Social Club, Inc.*, 333 N.W.2d 442 (S.D.1983); *Forester v. Weber*, 298 N.W.2d 96 (S.D.1980). The intent of the participating parties is the salient factor in determining the true relationship between parties to a monetary transaction. *Ned Nastrom Motors, Inc. v. Nastrom-Peterson-Neubauer Co.*, 338 N.W.2d 64, 67

(N.D.1983). A party's intent is ascertained not only from his testimony but also from the circumstances surrounding the transaction. *Id.* In arriving at the intent of the parties, we consider the entire contract, *S & S Trucking*, 346 N.W.2d at 299, and those factors occurring before and after the signing of an agreement. *Board of Regents v. Mussallem*, 94 Wis.2d 657, 289 N.W.2d 801, 808 (1980); *Central Auto Co. v. Reichert*, 87 Wis.2d 9, 273 N.W.2d 360, 365 (App.1978); *H & R Truck Leasing Corp. v. Allen*, 26 Wis.2d 158, 131 N.W.2d 912, 914 (1965).

The assignment of the real estate contract does not specifically address the issue of when Bothwell was to become entitled to possession of Outlot H–3. Nor does it specify whether Bothwell was to receive only surface rights in Outlot H–3 or both surface and mineral rights. Although the intention of the parties to a written contract should be determined from the writing alone, if the contract is ambiguous in any respect it is proper in construing its terms to look to the circumstances under which it was executed and the matters to which it relates. *Oakes Farming Ass'n v. Martinson Bros.*, 318 N.W.2d 897, 907–908 (N.D.1982). Thus, the trial court erred in failing to allow testimony which addressed the intention of the parties.

Limited testimony was allowed concerning some of the negotiations leading to the signing of the assignment and the intention of the parties as to the extent of Bothwell's interest in Outlot H–3. Some of this testimony was offered by BAM itself. The trial court refused to allow similar testimony from Bothwell based upon the parol evidence rule. As asserted by Bothwell, however, it appears patently unfair that the party offering parol evidence about the terms of a written agreement should be permitted to object when the opposing party offers parol evidence concerning the same issue. Furthermore, "where an ambiguous contract exists, it should be interpreted most strongly against the one who drafted the contract and caused the uncertainty to exist." *City of Sioux Falls v.*

*Henry Carlson Co.*, 258 N.W.2d 676 (S.D. 1977). Therefore, it was clearly error to exclude evidence of the intentions of the parties as expressed before the signing of the agreement. "The surrounding circumstances from which a contract stems are to be considered when interpreting its provisions." *Mitzel v. Hauck*, 78 S.D. 543, 547, 105 N.W.2d 378, 380 (1960).

More importantly, however, SDCL 43–26–2 states in part:

An agreement on the part of a seller of real property to give the usual covenants, binds him to deliver a warranty deed in the form prescribed by § 43–25–5

...

BAM agreed to deed Outlot H–3 to Bothwell on April 1, 1989. No exceptions or reservations of title were expressed in any agreement transferring the property. Therefore, BAM is required to deliver Bothwell a warranty deed for both the surface and mineral interests on Outlot H–3 as of April 1, 1989. However, Bothwell is now and has been since 1981, the equitable owner of both the surface and mineral interests of Outlot H–3.

The trial court was overly impressed with the purpose or use that Bothwell had for the land. The fact that his main purpose for getting the land was to pasture livestock does not constitute a rejection of either fee title or mineral rights, especially when both were intended, granted, and not reserved. No restrictions or limitations were put on the grant or gift by the grantor/seller Jones. Even the requirements concerning surveying and platting were superimposed on the "assignment" by counsel for BAM.

Accordingly, I would reverse the trial court.